**Eugene G. DIAKOFF, Plaintiff,**

v.

**AMERICAN RE–INSURANCE COMPANY, Defendant.**

**No. 78 CIV 5910 (LBS).**

United States District Court, S. D. New York.

Jan. 28, 1980.

Weingold, Berman & Koerner, Carl S. Koerner, Margaret B. Hannigan, New York City, for plaintiff.

Sullivan & Cromwell, Paul P. Colborn, New York City, for defendant.

## OPINION

SAND, District Judge.

This is a diversity action[1] in which Eugene G. Diakoff, a participant in an Incentive Compensation Plan (the "Plan") maintained by his former employer, the American Re-Insurance Company ("American Re"), seeks recovery of benefits under the Plan. Plaintiff alleges two causes of action. The first is for the payment of deferred compensation allocated to plaintiff under the terms of the Plan. The second is for an accounting of an allocation of the contribution to plaintiff for the profit sharing year 1973. With respect to the first cause of action, defendant American Re contends that pursuant to a Forfeiture for Competition Clause in the Plan, plaintiff forfeited his deferred compensation when he resigned from its employ to enter the service of a competitor. In response to the second cause of action, defendant argues that the decision whether plaintiff was to receive any profit sharing benefits for 1973 was in the absolute discretion of American Re's committee in charge of the administration of the Plan.

The parties to this action have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff and defendant have executed and submitted a Stipulation of Facts and Contentions, and there is no dispute as to the material facts.[2]

---

1. Plaintiff is a citizen and resident of the State of Connecticut. Defendant is, and has been since January 1, 1978, a corporation organized and existing under the laws of the State of Delaware. At all times relevant to this action, defendant was a corporation organized and existing under the laws of the State of New York, with its principal place of business in the City, County and State of New York.

2. The record also consists of various affidavits and the deposition of plaintiff.

For the reasons hereinafter discussed, this Court grants defendant's motion for summary judgment.

*DISCUSSION*

In his amended complaint, plaintiff puts forth four claims for relief: first, the Forfeiture for Competition Clause was not in the Plan on the date that he resigned from American Re; second, Section 19 of the Plan required the consent of the participants in order for the re-amendment of the forfeiture clause to become effective; third, plaintiff is entitled to an accounting for the profit sharing year 1973; and fourth, even if the forfeiture for competition provision was validly reinstated, it should not be enforced because it is an unreasonable restraint of trade. The Court will address each of these contentions in turn.

A. *The Status of the Forfeiture for Competition Clause on January 25, 1974*

Plaintiff became a salaried employee of defendant American Re on or about January 23, 1956. (Stip. ¶ 22).[3] On August 15, 1967, plaintiff was an officer of American Re and became a senior participant in the Plan which, as amended from time to time, American Re has maintained for officers and "key employees" (as defined in the Plan) since December 15, 1953. (Stip. ¶¶ 6, 23).

As an officer and "key employee" and senior participant in the Plan, plaintiff was entitled to receive, at the end of each "profit sharing year" as therein defined, an allotment of a portion of American Re's "profit" for that year as computed by a formula set forth in the Plan. Pursuant to the provisions of the Plan, and in accordance with a schedule of "senior participant" ages therein set out, a certain percentage of plaintiff's allotment was to be immediately distributed to him in cash, with the balance credited to his "account" at American Re and held, together with accrued interest, as "deferred compensation". From 1967 to 1973 pursuant to the Plan, plaintiff was allotted and

credited with interest in certain sums, of which $15,665.61 was withheld by American Re as credits to his account. As a "senior participant" in the Plan, plaintiff was entitled to a distribution of his "deferred" allotments and accrued interest upon the occurrence of an "Event of Distribution", one of which was defined as "the termination of the employment of the participant". (Section 13(a) of the Plan).

As of November 26, 1969, the Plan included as Section 15 the following provisions on the forfeiture of a participant's benefits:

"Section 15. Conditions. Anything in the Plan to the contrary notwithstanding, *all benefits of any participant hereunder,* except to the extent of any prior distributions under the Plan, *shall be forfeited and no part thereof shall thereafter be paid if the Committee shall determine that such participant* (a) has been dishonest while in the employ of any corporation within the Group, (b) has acted in a manner detrimental to the interests of any such corporation, (c) *has entered the employ of any other corporation engaged to a substantial extent in business as a reinsurance carrier,* or (d) has retired and thereafter, in time of war or other national emergency, has refused the request of the Parent Company or any of its subsidiaries to render services, whether of a regular nature or otherwise, to it on terms of employment comparable to the terms of his employment prior to his retirement, unless his refusal shall be based on ill health." (Emphasis added) (Ex. 3).

Clause (c) of Section 15 is what is referred to herein as the forfeiture clause.

On November 26, 1969, as part of an overall plan of amendment which made some but not all amendments subject to stockholder and IRS approval, the Board deleted the forfeiture clause, effective January 1, 1970 (Ex. 4, p. 8, top). In place of the forfeiture clause, the following Forfeiture for Crime Clause was substituted:

---

**3.** "Stip. ¶" refers to paragraphs of the Stipulation and "Ex." refers to the exhibits to the Stipulation.

"Section 15. Conditions. Anything in the Plan to the contrary notwithstanding, all benefits of any participant hereunder, except to the extent of any prior distributions under the Plan, shall be forfeited and no part thereof shall thereafter be paid if the Committee shall determine that such participant has been convicted, under a judgment which has become final, by a court of competent jurisdiction of, or has pleaded guilty to, a crime involving embezzlement, theft or other acts of dishonesty involving any corporation within the Group while in the employ of any such corporation."

At the November 26, 1969 Board meeting, it was:

"RESOLVED that the officers be, and they hereby are, authorized to do or cause to be done any or all things which in their judgment are necessary or desirable to carry out such amendments substantially in the form adopted, with such changes therein, subject to approval by the Internal Revenue Service, as may be made by the officers of the Company, upon the advice of counsel, as the officers of the Company in their discretion may approve and as may be evidenced by their incorporation in the Plan."

Thus, the Resolutions authorized the officers to do anything which in their judgment was necessary or desirable to carry out the amendments and explicitly contemplated that "changes" to the amendments "may be made by the officers . . . and incorporat[ed] in the Plan"; in other words, amending the Plan was a contemplated action.

On December 19, 1969 Sullivan & Cromwell, counsel for American Re, requested rulings from the IRS relating to certain of the amendments to the Plan. (Ex. 5). On or about December 30, 1969 American Re sent to its stockholders a Notice of Special Meeting of Stockholders and Proxy Statement (the "Notice"; Ex. 6) seeking stockholder approval of certain of the amendments, not including the modification of the forfeiture clause; the Board had not conditioned the effectiveness of such amendment on stockholder approval.

The participants in the Plan were not informed of any of the amendments referred to in the Resolutions or the Notice; but plaintiff as a stockholder received a copy of the Notice. (Stip. ¶ 20).

At the Special Meeting of Stockholders on February 3, 1970 the stockholders approved the amendments proposed in the Notice. (See Ex. 8).

On June 22, 1970, the IRS advised American Re, through its counsel, that the amendment of the forfeiture clause would be a barrier to the granting of a favorable ruling on the other substantive aspects of the amendments. (See Ex. 9). (It appears that the IRS took the position that the more lenient forfeiture clause raised a question of constructive receipt). Accordingly, on June 23, 1970 T. Darrington Semple, Jr., Secretary of American Re, sent a telegram to Merl L. Rouse, Chairman of the Board of American Re, requesting Rouse's decision on whether the amendment of the forfeiture clause should be withdrawn pursuant to the "power" of the officers to "so amend". (Ex. 10). In his responding telegram, Rouse agreed that the old forfeiture clause should be reinstated. (Ex. 11). That act of amending the Plan in order to reinstate a provision that the IRS said was necessary, and without which the participants might be taxed on their deferred compensation before receiving it, was clearly within the authority delegated to the officers by the Board and was thus effective. No subsequent act amended the forfeiture clause of the Plan before plaintiff resigned.

The IRS was informed on June 26, 1970 of American Re's withdrawal of the amendment and the Board was informed on August 26, 1970. (Ex. 12, 13).

On March 19, 1971 the IRS informed the Company that it would not issue a ruling until new IRS regulations were adopted. As a result, the officers decided (in May 1971) not to make any of the 1969 amendments effective, and only then printed and circulated to plan participants (in June 1971) a revised edition of the Plan (Ex. 17)

that reflected only a December 1970 amendment on the method of distribution of benefits, and otherwise was the same as the prior edition of the Plan (Ex. 3), including the forfeiture clause. In short, since the Board's deletion of the forfeiture clause was never incorporated in a printed edition of the Plan (Stip. ¶ 20), Section 15 of the next edition that was circulated after Rouse's amendment (Ex. 17) was the same as Section 15 of the 1967 edition (Ex. 3), the immediately preceding edition.

On January 25, 1974 plaintiff resigned from the employ of American Re and entered the employ of the National Reinsurance Corporation, which is a corporation engaged to a substantial extent in business as a re-insurance carrier; at that time he had in his possession the most recent edition of the Plan (Ex. 17). (Stip. ¶ 22). The Committee determined on February 14, 1974 that pursuant to the forfeiture clause plaintiff had thereby forfeited his deferred compensation (see the minutes of the Board meeting; Ex. 18); it further determined that no profits for the year 1973 would be allotted to plaintiff (Stip. ¶ 25).

 It is stipulated that, if on the date of plaintiff's resignation the Plan contained the forfeiture clause, then plaintiff thereby forfeited any right to benefits under the Plan and is not entitled to recover under either the First or Second Claims for Relief. (Stip. ¶ 29, 31). The Court finds that the stipulated facts clearly indicate that the forfeiture clause was in the Plan as of the date of plaintiff's resignation.

The facts as set forth above demonstrate the following course of events: in June 1970, in response to objections by the IRS, the officers withdrew the amendment that had deleted the forfeiture clause pursuant to the authority granted to the officers by the Board in November 1969 when it authorized the Plan amendments. Then, after the IRS advised in March 1971 that it would issue no ruling for the indefinite future, the officers decided in May 1971 to leave the entire Plan in the form it had been in prior to the Board Resolutions and the stockholder vote, so as not to disturb the prior IRS

ruling. Except for the amendment on the method of distributing benefits that they were informed of on December 8, 1970 (Ex. 14)—and which was reflected in the Plan edition circulated in June 1971 (Ex. 17)—the participants in the Plan were never told that any changes were being made in the Plan as it was in effect on November 22, 1967 (Ex. 3). All editions of the Plan that were circulated to participants included the forfeiture clause.

The foregoing conclusively demonstrates that the forfeiture clause was in the Plan when plaintiff resigned. Accordingly, pursuant to the parties' stipulation (Stip. ¶ 31) that if such were the case plaintiff would not be entitled to the amounts sought in the First and Second Claims for Relief, this Court renders summary judgment in American Re's favor on those claims.

*B. Section 19 and Re-Amendment of Section 15*

Plaintiff's Second Claim for Relief is premised on the assertion that under Section 19 of the Plan the consent of the participants to Rouse's June 23, 1970 amendment withdrawing the deletion of the forfeiture clause should have been sought. Section 19 reads in its entirety:

"*Section 19. Amendment or Termination.* The Board of Directors of the Parent Company shall have the power, at any time or from time to time, to terminate the Plan or to amend any section or sections thereof, except that no amendment of Section 7 or 8 increasing the amounts which may be appropriated under the Plan shall be made unless such amendment shall be approved at a meeting of the Parent Company's stockholders by the holders of a majority of the voting stock of the Parent Company present at such meeting. In no event shall the termination of the Plan *or any amendment thereof reduce the amounts theretofore allotted or paid under the Plan or change materially the time of payment of the amounts so allotted,* unless, in the case of an amendment, such amendment shall be consented to by the participants and the

beneficiaries of the participants receiving payments under the Plan who are affected thereby. Failure to appropriate profit in respect of any year or years shall not be deemed to be a termination of the Plan." (Ex. 3, p. 4) (Emphasis added).

Section 19 thus provides in pertinent part that the Board has the authority to amend any part of the Plan except that it may make no amendment to the Plan that reduces the amounts of profit that have been allotted to participants of the Plan or changes the Plan's method of distributing such amounts, unless the participants consent to such an amendment. The concept is that once profits are allotted under Section 9, participants have a vested right in those amounts, subject to any conditions subsequent in the Plan, and thus any reduction in such amounts is conditioned upon approval by those participants. Similarly, any change in the installment distribution procedure set forth in Section 11 is subject to the consent of the Plan participants.

█ Plaintiff contends that his approval and that of the other Plan participants was required pursuant to Section 19 as a condition to reinstatement of the old Forfeiture for Competition Clause. It is clear, however, that Section 19 grants to the Board broad authority to amend "any section or sections" of the Plan and only limits that authority with respect to amendments of Section 7 or 8 or amendments that "reduce the amounts theretofore allotted or paid under the Plan or change materially the time of payment of the amount so allotted." Since Rouse's amendment withdrawing the modification of the forfeiture clause did not amend Sections 7 or 8 and neither reduced any amounts that had been allotted to participants or changed the time of payment of any such amounts, no participant approval was required.

Plaintiff contends that the Plan is a written contract and amendments cannot be made without the participant's consent. As noted above, however, Section 19 sets forth clear language establishing when consent is required, and the language does not apply to the instant situation. Moreover, since the participants were never informed of any of the Plan amendments referred to in the Board Resolutions, they did not rely on them to their detriment.[4]

The Court concludes that summary judgment should be rendered in defendant's favor with respect to the Second Claim for Relief.

## C. Accounting of Profits for Profit-Sharing Year 1973

In addition to seeking amounts that had already been allotted to him—and which, American Re submits, he forfeited on his resignation—plaintiff seeks an accounting as to profits for the profit-sharing year 1973 that were never allotted to him.

█ Section 9 of the Plan provided at all relevant times, in pertinent part, that any profit

"shall be allotted among all or any of the participants and in such proportions as the Committee shall determine, and amounts so allotted to any participant shall be subject to the approval of the board of directors of the corporations within the Group employing such participant."

Accordingly, the Committee has full discretion to determine which participants shall receive an allotment, and the amount of any such allotment. On February 14, 1974 —after plaintiff had resigned to enter the employ of a competitor—the Committee determined that no profits for the year 1973 would be allotted to plaintiff. Since the Committee had the absolute right under Section 9 of the Plan to do so, plaintiff has no claim for any profit-sharing allotment for 1973.

---

4. Plaintiff, who as a stockholder was informed of such amendments when he received the Proxy Statement, cannot claim any detrimental reliance; he received in June 1971 (over 2½ years *before* he resigned, and about 1½ years *after* receiving the Proxy Statement) the new- est edition of the Plan (Ex. 17), which contained the forfeiture clause and which he had in his possession when he resigned, and no subsequent edition was issued before he resigned. (Stip. ¶¶ 20–22).

### D. Forfeiture For Competition Clauses under New York Law

Plaintiff's Third Claim for Relief is that the forfeiture clause "should not be enforced by this Court in equity against the plaintiff because it is void and unenforceable as an unreasonable restraint of trade." (Amended Complaint, ¶ 25). Defendant disputes this claim on the theory that under New York Law,[5] a Forfeiture for Competition Clause is enforceable as a matter of law under the rule set forth in *Kristt v. Whelan*, 4 A.D.2d 195, 164 N.Y.S.2d 239 (1st Dept. 1957), *aff'd without opinion*, 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E.2d 116 (1958). Plaintiff, however, contends that *Kristt* has been overruled, and that the forfeiture clause must be tested against the various criteria of reasonableness as set forth in New York employment contract cases decided subsequent to *Kristt*.

Courts have evaluated covenants not to compete in the context of benefit or compensation plans, on the one hand, and employment contracts on the other. In benefit or compensation plans, broadly conceived, the employee is not barred from future employment, but forfeits any benefits which have accrued to him upon entering the employment of a competitor. In noncompetition covenants found in employment contracts, however, the employee is barred from employment with a competitor.

The 1957 case of *Kristt v. Whelan, supra*, which arose in a benefits plan context, involved a trust fund set up for the benefit of employees of a publishing company. The deed of trust provided that if any beneficiary "shall engage or be employed in any occupation or business which is in competition with the company in any of the publishing fields then engaged in by the Company, the Trustees shall upon request in writing by the Employer, cause the entire interest of such Beneficiary to be forfeited, and upon such forfeiture, the Beneficiary shall have no right thereto." 164 N.Y.S.2d at 241. In *Kristt*, plaintiff contended that this provision restrained competition and was against public policy. The New York Court of Appeals, however, was unpersuaded by this argument, stating: "It is no unreasonable restriction of the liberty of a man to earn his living if he may be relieved of the restriction by forfeiting a contract right or by adhering to the provisions of his contract." *Id.* at 243. The Court explained:

> "*The provision for forfeiture here involved did not bar plaintiff from other employment.* He had the choice of preserving his rights under the trust by refraining from competition with . . . [his employer] . . . or risking forfeiture of such rights by exercising his right to compete with . . . [the employer]. (Emphasis added).

Subsequent to *Kristt*, cases decided by New York Court of Appeals have analyzed noncompetition clauses in the context of employment contracts. The general New York rule for noncompetition covenants is that "[s]ince there are powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood, the courts will subject a covenant by an employee not to compete with his former employer to an overriding limitation of 'reasonableness' ". *Purchasing Assoc. v. Weitz*, 13 N.Y.2d 267, 272, 246 N.Y.S.2d 600, 604, 196 N.E.2d 245 (1963); see *Millet v. Slocum*, 5 N.Y.2d 734, 177 N.Y.S.2d 716, 152 N.E.2d 672; *Lynch v. Bailey*, 300 N.Y. 615, 90 N.E.2d 484 (1947); *Karpinski v. Ingrasci*, 28 N.Y.2d 45, 49, 320 N.Y.S.2d 1, 4, 268 N.E.2d 751 (1971). The New York Court of Appeals has most recently enunciated the standards for the analysis of restrictive covenants as follows:

---

5. In his memorandum at law, at page 8, plaintiff states that American Re's Incentive Compensation Plan is an employee pension benefit plan within the meaning of Section 3(2) of the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001, *et seq.* However, as plaintiff correctly indicates, since the cause of action arose before the effective date of ERISA, its provisions, which reflect the Congressional "declaration of a strong public policy against forfeiture of employee benefits", *Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 84, 421 N.Y.S.2d 847, 397 N.E.2d 358 (1979) do not apply. It is New York law which governs here.

"Such covenants will be enforced only if reasonably limited temporally and geographically . . . and then only to the extent necessary to protect the employer from unfair competition which stems from the employee's use or disclosure of trade secrets or confidential customer lists . . . [or from the fact that] . . . the employee's services are truly 'special, unique or extraordinary' and not merely of 'high value to his employer' . . . ."

*Columbia Ribbon & Carbon Mfg. v. A-1-A Corp.*, 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 1006–1007, 369 N.E.2d 4, 6 (1977).

The question of whether a noncompetition agreement in a compensation plan is void and unenforceable under New York law first came before the Second Circuit in 1974 in *Bradford v. New York Times Company*, 501 F.2d 51 (2d Cir. 1974). In that case, the Court upheld a restrictive covenant in an incentive compensation plan which prohibited Bradford from working for a competitor, and provided for discontinuance of unpaid stock installments in the event of a "breach" of the agreement.[6] Citing *Karpinski* and *Purchasing Associates*, the Second Circuit ruled that restrictive covenants are subject to limitations of reasonableness. Noting that *Kristt* has been urged as the basis for the rule that restrictive covenants may be enforced on the theory of "employee choice" which makes judicial determination of reasonableness unnecessary, the Court stated:

"[*Kristt*] has not been discussed in any subsequent court of appeals decision. . . . [W]e do not believe that *Kristt* is of significance in light of Chief Judge Fuld's searching opinions for the court of appeals in *Karpinski* and *Purchasing Associates*."

501 F.2d at 56.

The Court then proceeded to examine the *New York Times* covenant in terms of

threat of disclosure of trade secrets, risk of solicitation of business directly from former customers, special, unique or extraordinary services of the employee, and reasonableness of time or geographical limitations.[7]

In short, the Second Circuit held that *Kristt* had been overruled *sub silentio* by subsequent cases and thus was not controlling. It should be noted that with the exception of *Kristt*, at the time of the *Bradford* decision, the New York Court of Appeals had not had occasion to analyze covenants in a benefit or compensation plan context. The *Purchasing Associates* and *Karpinski* decisions were employment contract cases and thus *Kristt* was not apposite. Moreover, there was no need in those cases to distinguish *Kristt*, or to make it clear that the 1957 case remained applicable in other contexts.

However, the most recent discussion of restrictive covenants, *Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 48 N.Y.2d 84, 421 N.Y.S.2d 847, 397 N.E.2d 358 (1979) establishes that, although it may have appeared otherwise to some observers, including the Court in *Bradford, supra*, it was not the intention of the New York Court of Appeals to overrule *Kristt sub silentio*. In *Post*, the first case since *Kristt* to examine a noncompetition covenant outside an employment contract context, the Court held that a forfeiture for competition provision in an incentive compensation plan should not be enforced where termination of an employee is involuntary and without cause. The Court stated the *Kristt* rule and noted that prior cases,

"as in *Krisst*, [sic] . . . have involved claims by an employee who sought pension benefits from his former employer despite having voluntarily left the employer and joined forces with a competitor. In such situations effect has been given to the forfeiture-for-competition

6. The *Bradford* court stated that "we are presented with a restraint upon a former employee with a provision for liquidated damages in the event of a breach". 501 F.2d at 57.

7. It has been noted that *Kristt* and *Bradford* "are in conflict as to whether a court can review the general reasonableness" of a forfeiture provision in a compensation plan. *Amory v. Boyden Associates*, 434 F.Supp. 671, 672 n. 1 (S.D.N.Y.1976).

provision, and the employee's claim has been rejected."

The Court concluded that:

"Under the circumstances of the case at bar it would be unconscionable to tolerate a forfeiture, precipitated as it is by the unwarranted action of the employer. We find, therefore, that in the case of an involuntary discharge, the rule stated in *Krisst* [sic] *v. Whelan,* . . . *supra,* does not apply . . . [and the forfeiture] . . . is unreasonable as a matter of law and cannot stand."

The clear implication of the Court's decision in *Post* is that *Kristt* continues to set forth the rule applicable to incentive compensation plans except for cases of involuntary termination. We read *Post* therefore as a statement that in cases such as the case before this Court, where the employee has the choice of preserving his benefits or forfeiting them by resigning to work for a competitor, *Kristt* continues in force.

■ Accordingly, under the *Kristt* rule, this Court holds that the Plan's forfeiture clause is valid and enforceable, and should not be tested against the criteria of reasonableness set forth in the employment contract cases.

## CONCLUSION

In light of the foregoing, the Court grants defendant summary judgment dismissing plaintiff's claims for relief.

SO ORDERED.