IQBAL AKHTER, M.D., *et al.*, Plaintiffs-Appellants, *v.* SIRISH SHAH, M.D., Defendant-Appellee.

First District (2nd Division)   No. 83—429

Opinion filed November 1, 1983.

Douglas R. Carlson, Ruth E. Van DeMark, and Robert A. Strelecky, all of Wildman, Harrold, Allen & Dixon, of Chicago, for appellants.

Peter G. Frezados, of Regas & Frezados, of Chicago, for appellee.

PRESIDING JUSTICE DOWNING delivered the opinion of the court:

In this interlocutory appeal, plaintiffs Iqbal Akhter, M.D., and I. Akhter, M.D., S.C., claim that the trial court erroneously denied their motion for a preliminary injunction in which they sought to enforce a covenant not to compete contained in defendant, Sirish Shah, M.D.'s, employment contract.

Plaintiff Iqbal Akhter, M.D. (hereinafter referred to as plaintiff), is an internist-cardiologist who, in 1978, formed and became the sole owner of the professional corporation of plaintiff, I. Akhter, M.D., S.C. (hereinafter referred to as the corporation). The corporation provides medical services to patients at several hospitals, but in 1980, derived the largest percentage of its income from work performed at Northwest Hospital in Chicago.

About mid-1980, defendant contacted plaintiff in regard to obtaining employment with him. At this time, defendant had only been licensed to practice medicine for one year and had just finished a fellowship. He had no private practice or clientele of his own. Defendant represented to plaintiff that he was attempting to purchase the practice of a doctor who worked at two hospitals other than Northwest.

After negotiations between the two parties, plaintiff drafted, and defendant signed, an employment contract dated August 4, 1980, which contained the following provision:

> ## "COVENANT NOT TO COMPETE
> Dr. S. Shah agrees not to compete against the corporation if for any reason he is no longer associated with the corporation as an employee of the corporation, each doctor will abstain from competing against the other by not practicing in the hospitals that the other party is on or prior to August 1, 1980."

Plaintiff assisted defendant in applying to and obtaining staff privileges at Northwest Hospital. After plaintiff became dissatisfied with defendant's performance, the parties signed a rider to the contract on September 28, 1981. In the rider, defendant admitted that because he was unable to join the staffs of several hospitals he applied to, he did not generate any revenue from them as was the understanding he had with plaintiff prior to the signing of the employment contract. Defendant's percentage of the profits was therefore re-

duced. Further, defendant admitted that he did not move to a location closer to Northwest Hospital as was the prior understanding of the parties, but continued to live 30 miles from said hospital. No mention was made of the covenant-not-to-compete clause. Defendant was subsequently terminated from plaintiff's employ on February 15, 1982, but nevertheless continued to accept referrals from physicians at Northwest Hospital and to practice there.

Plaintiff initiated this action for injunctive relief and for monetary damages against defendant on May 12, 1982. In count I of his eight-count amended complaint, plaintiff requested that defendant be enjoined from: (1) practicing medicine at Northwest Hospital; (2) disparaging plaintiff's professional competence and standing; or (3) otherwise unlawfully attempting to divert referrals and patients from plaintiff.

Plaintiff filed a motion for a temporary restraining order or preliminary injunction, requesting that defendant be enjoined from practicing medicine at Northwest Hospital. At the hearing, plaintiff testified that the number of referrals he received from Northwest was 30 to 50 per month in 1981, and only five or six per month in 1982; also, the corporation's income declined from an average of $58,000 per month for the last six months of 1981, to about $38,000 per month for the latter half of 1982. He admitted that there were 10 or 11 other cardiologists who practice at Northwest, and that it was possible that some of them also get referrals for cardiology work, but he stated he did not know if they were the same doctors from whom he received work.

The trial court granted defendant's motion for a directed finding. In reaching that decision, the trial court found that: the covenant was "unenforceable and against the policies of the State of Illinois in that it is much too broad without specification as to what hospitals are involved"; that by plaintiff's own testimony, the purpose of the provision was to avoid competition; and that all plaintiff seeks to protect "is the possible referrals that he may get by eliminating [defendant] at this juncture." The court concluded that there was no protectible interest to be restrained, but that the case would continue as to the claim for damages. Plaintiff brought this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (87 Ill. 2d R. 307(a)(1)).

I

Plaintiff strongly contends on appeal that the trial court, in denying his petition for a preliminary injunction, both misread the language of the covenant not to compete and ignored long-established Il-

linois law. Plaintiff recognizes that his burden of proof at the evidentiary hearing required that he establish by the preponderance of the evidence that: (1) he possessed a certain and clearly ascertained right which needed protection; (2) that he would suffer irreparable injury without such protection; (3) that he had no adequate remedy at law; and (4) that he was likely to succeed on the merits. (*Baal v. McDonald's Corp.* (1981), 97 Ill. App. 3d 495, 499, 422 N.E.2d 1166, *appeal denied* (1981), 85 Ill. 2d 563.) The trial court concluded that plaintiff failed to prove that he had a clearly ascertained right which needed protection since the contract provision was unenforceable.

As plaintiff notes, our courts have recognized that the question of whether a contractual restriction upon the right of a party to practice his profession is reasonable is one of law which must be determined under the particular facts of each case. The following factors will be considered: (1) whether the contract is supported by valuable consideration; (2) whether the restraint imposed is limited or partial; (3) whether the restraint is greater than is necessary to protect the promisee; and (4) whether enforcement of the contract would be injurious to the public or cause undue hardship to the promisor. *Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 355, 134 N.E.2d 329; *Storer v. Brock* (1933), 351 Ill. 643, 649, 184 N.E. 868.

There is no dispute by either party that the contract was supported by valuable consideration. Plaintiff, however, strongly contends that the trial court erroneously found the covenant not to compete provision unenforceable because it was "too broad" in that it "just says any hospital that they may practice in."

In recent years, the courts in Illinois have expressed an abhorrence for restraint of trade and have instead encouraged fair competition in business, with the result that covenants not to compete in employment contracts have been carefully scrutinized. (*Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 713, 390 N.E.2d 68.) However, where the restraint is reasonable as to time and territory, the agreement is valid and injunctive relief is both customary and proper. *Field Surgical Associates, Ltd. v. Shadab* (1978), 59 Ill. App. 3d 991, 995, 376 N.E.2d 660.

Plaintiffs argue that although the terms of the contract state that each party will abstain from competing with each other by "not practicing in the hospitals that the other party is on or prior to August 1, 1980," the parties at the time of the signing of the contract knew that this clause was limited to, at most, eight hospitals. In any event, plaintiff now argues he is only seeking an injunction to prevent defendant from practicing at one hospital—Northwest. While we are

mindful that a court of equity may, under certain circumstances, modify a covenant so as to make it reasonable, it is the fairness of the original restraint imposed that is the relevant consideration. (*Barrington Trucking Co. v. Casey* (1969), 117 Ill. App. 2d 151, 156, 253 N.E.2d 36, *appeal denied* (1970), 42 Ill. 2d 586; *L & R Insurance Agency, Inc. v. McPhail* (1968), 92 Ill. App. 2d 107, 112, 235 N.E.2d 153, *appeal denied* (1968), 39 Ill. 2d 626.) However, where the original restriction neither provides a time limitation nor clearly identifies the hospitals in which the practice is to be prohibited, the restriction, which is too vague and ambiguous, should not be rewritten by the court.

■ The covenant not to compete clause in the instant contract did not specify any time duration. It could be in force for the lifetime of defendant. Plaintiff cites a supreme court case wherein a covenant with no time limitation was enforced (*Storer v. Brock* (1933), 351 Ill. 643, 647-48), and a subsequent case where the supreme court noted that agreements unlimited in time had been enforced in Illinois (*Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 355). Although we glean from these cases that an unlimited time restraint is not by itself grounds for declaring a covenant void, we believe that in this case where it is not possible to determine which hospitals the covenant refers to from the face of the instrument, and where the covenant has no time limitation, it is too vague and indefinite to be enforced. As our supreme court has noted, "[t]o stake out unrealistic boundaries in time and space *** is to impose upon an employee the risk of proceeding at his peril, or the burden of expensive litigation to ascertain the scope of his obligation." (*House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 39, 225 N.E.2d 21.) For these reasons, we affirm the trial court's decision denying plaintiff injunctive relief.

## II

In light of our above ruling that the covenant not to compete, as drafted by plaintiff, is unenforceable, we need not address the additional bases upon which the trial court grounded its decision.

For the above stated reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.