Norton SARNOFF and Carl Fletcher, Plaintiffs,

v.

AMERICAN HOME PRODUCTS CORP., a Delaware corporation, Defendants.

No. 83 C 0647.

United States District Court, N.D. Illinois, E.D.

Feb. 20, 1985.

Lionel G. Gross, Robert K. Blain, Altheimer & Gray, Chicago, Ill., for plaintiffs.

Lewis Perkiss, Kenneth J. Petrine, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Plaintiffs Norton Sarnoff and Carl Fletcher brought this action against their former employer, American Home Products Corporation ("AHP"), in an effort to

recover profit-sharing benefits awarded to them under AHP's Management Incentive Plan (the "Plan") during their employment. AHP, through its Incentive Compensation Committee (the "Committee"), declared a forfeiture of these benefits when it determined that Sarnoff and Fletcher were employed by a competitor, in violation of the Plan's noncompetition provision. The parties do not dispute the facts surrounding these events and have filed cross-motions for summary judgment on the issues of whether the Plan's noncompetition provision is valid under applicable law and whether Sarnoff and Fletcher were in violation of the Plan's noncompetition provision. These are the matters currently before the Court.

## FACTS

AHP is a Delaware corporation headquartered in New York and selling AHP sells products in a variety of industries (*e.g.,* drugs, foods, paints, household products, housewares) on a worldwide basis. AHP adopted its Management Incentive Plan in 1967 and since then has administered the Plan from its New York headquarters. The Plan covers present and former AHP employees worldwide.

Plaintiffs Sarnoff and Fletcher became AHP employees during 1979, when AHP acquired their former employer, EZ-Por Corporation ("EZ-Por"). Prior to its acquisition by AHP, EZ-Por produced and sold aluminium cookware items. EZ-Por maintained its sole place of business in Illinois, where it was incorporated. Sarnoff served as Vice-President of EZ-Por and owned shares in the company while Fletcher worked as EZ-Por's plant manager and salesman. After the acquisition both Sarnoff and Fletcher continued to work in Illinois in their former positions for AHP's EZ-Por subsidiary ("AHP-EZ-Por").

On January 29, 1981, AHP sent letters to Sarnoff and Fletcher informing them that AHP's Incentive Compensation Committee had granted them "contingent" stock awards of 600 and 150 shares, respectively, of AHP stock. These letters state that the awards would be paid out at a future date under certain conditions. The letter also requested award recipients to sign and return to AHP a copy of the letter "as acknowledgement of receipt of both this notification and a copy of the Plan, and your acceptance of New York Law as governing Plan interpretations." Both Sarnoff and Fletcher signed and returned copies of the letter as requested.

After resigning from AHP-EZ-Por in January of 1981, Sarnoff formed Ensar Corporation ("Ensar") as an Illinois corporation. Fletcher joined Sarnoff at Ensar after leaving AHP-EZ-Por during February, 1981.

In December of 1981, Sarnoff and Fletcher received questionnaires from AHP, which they completed and returned as requested, attaching Ensar's product list. At its January 27, 1982 meeting, AHP's Committee determined that several of Ensar's products were in competition with products sold by AHP's Ekco Housewares Division. Consequently, the Committee determined that Sarnoff and Fletcher had forfeited their awards.[1] By letter dated February 3, 1982, AHP's Treasurer notified Sarnoff and Fletcher of the Committee's decision. This action ensued.

## DISCUSSION

AHP argues that New York law governs this action, that New York law recognizes the validity of the Plan's noncompetition clause and that since the plaintiffs breached the noncompetition clause, the Committee properly declared the forfeiture. Sarnoff and Fletcher contend that Illinois substantive law governs this action, and that

---

1. Plan Section VI(4)(d)(i) provides in part:
   [No] delivery from a Contingent Award Account shall be made to any Employee after termination of employment unless he shall have ... (i) refrained from becoming or serving as an officer, director or employee ... or owner of a business in competition with the Company ..... If these conditions are not fulfilled ... all [of the employee's] rights with respect to this Contingent Award Account shall thereupon be forfeited.

under Illinois law the AHP's noncompetition clause is void as overbroad. Alternatively, Sarnoff and Fletcher assert that AHP's noncompetition clause is similarly void under New York law. They also maintain that they have not breached the noncompetition clause and that, in any event, AHP should be estopped from asserting a breach.

Because there is no real conflict between the substantive law of New York and that of Illinois as to the validity of AHP's noncompetition clause, the choice of law issue is not controlling. Even assuming that New York and Illinois differ on this issue, however, Illinois' conflict of law principles indicate that Illinois' substantive law governs this controversy. Thus Illinois law must be applied in any event and its application precludes enforcement of the Plan's noncompetition clause.[2]

■ The courts of Illinois disfavor noncompetition clauses, enforcing only such provisions as are "reasonably necessary to protect a legitimate business interest or to prevent improper and unfair competition." *Rao v. Rao,* 718 F.2d 219, 223 (7th Cir. 1983). *See also American Hardware Mutual Insurance Co. v. Moran,* 705 F.2d 219, 221 (7th Cir.1983); *Akhter v. Shah,* 119 Ill.App.3d 131, 74 Ill.Dec. 730, 733, 456 N.E.2d 232, 235 (1st Dist.1983); *MBL (USA) Corp. v. Diekman,* 112 Ill.App.3d 229, 67 Ill.Dec. 938, 944–45, 445 N.E.2d 418, 424–25 (1st Dist.1983) ("restrictive covenants are closely scrutinized"). These principles have been applied by Illinois courts to a forfeiture of deferred compensation based on breach of a noncompetition clause. *Johnson v. Country Life Insurance Co.,* 12 Ill.App.3d 158, 300 N.E.2d 11 (4th Dist.1973) (forfeiture of renewal premiums resulting from former insurance agent's breach of noncompetition clause).

AHP does not contest the adherence of the New York courts to this same restrictive view of noncompetition clauses; when found in employment contracts. *See American Institute of Chemical Engineers v. Reber-Friel Co.,* 682 F.2d 382, 386–87 (2nd Cir.1982). Rather, AHP maintains that New York courts do not evaluate the reasonableness of noncompetition provisions where such clauses operate only to forfeit deferred compensation and such clauses do not actually prohibit competition by a former employee.

■ In support of its argument AHP cites *Kristt v. Whelan,* 4 A.D.2d 195, 164 N.Y.S.2d 239 (1st Dept.1957), *aff'd w/o opinion* 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E.2d 116 (1958). In *Kristt,* the New York Supreme Court, Appellate Division articulated the so-called "employee choice" rule: that a noncompetition clause is enforceable where the former employee has "the choice of preserving his rights [to deferred compensation] by refraining from competition with [his former employer] or risking forfeiture of such rights by exercising his right to compete." 164 N.Y.S.2d at 243. However, in *Bradford v. New York Times Co.,* 501 F.2d 51 (2nd Cir.1974), the Second Circuit stated that in light of subsequent decisions by the Court of Appeals of New York:

> We do not agree that *Kristt* represents the law of the state if it be construed to eliminate any inquiry into reasonableness because of some purported doctrine of 'employee choice.' The inquiry remains whether or not the restraint was reasonable and the contract was breached.

501 F.2d at 57.

Although the Second Circuit in *Bradford* had apparently interred the much criticized "employee choice" rule, at least three district court decisions within the Second Circuit have since concluded that *Kristt* remains alive and well. *Murphy v. Gutfreund,* 583 F.Supp. 957, 962–65 (S.D.N.Y. 1984) (recognizing the "employee choice"

---

**2.** On December 19, 1984 this court directed the parties to address the application of federal law to this action. *See* Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* The parties have stipulated that the AHP Plan at issue is exempted from ERISA as an unfunded plan maintained to provide deferred compensation to a selected group of management employees. *See* 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).

rule but refusing to apply the rule to non-competition clause imposed after former employee agreed to work for a competitor); *Diakoff v. American Re-Insurance Co.,* 492 F.Supp. 1115, 1121–23 (S.D.N.Y.1980); *Kelsey v. American Home Products Corp.,* CV 82–0448, Slip Op. at 7–8 (E.D.N.Y.1983). Each decision declined to follow *Bradford* as a result of the intervening decision by the Court of Appeals of New York in *Post v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 48 N.Y.2d 84, 421 N.Y.S.2d 847, 397 N.E.2d 358 (1979).

In *Post,* the New York court refused to apply the "employee choice" rule whenever the employer had discharged its former employee, then went on to find that forfeiture of pension benefits based on a non-competition clause was *"unreasonable* as a matter of law ... where an employee is involuntarily discharged by his employer *without cause."* 421 N.Y.S.2d at 849, 397 N.E.2d at 361 (emphasis added). In the course of its opinion, the New York court, citing *Kristt,* noted that where the employee had voluntarily terminated the employment relation, "effect has been given to the forfeiture-for-competition provision." *Id.* Each of the subsequent district court opinions cited above read this approving language, admittedly dicta, as breathing new life into *Kristt.*

This court must respectfully disagree. A rule which is honored only through its breach is not much of a rule, and this seems to be the state of the *Kristt* rule in the courts of New York. *Post* itself enunciated a major limitation of the rule stated in *Kristt.* Such limitations often presage the reversal of a rule rather than its reaffirmation. That *Post* did not disavow *Kristt* in cases of voluntary termination is not decisive, since the issue of voluntary termination was not before the *Post* court. Further, the parties have not cited to this

court and research has failed to disclose a single reported decision by the Court of Appeals of New York or the Appellate Division interpreting *Post* as reaffirming the "employee choice" rule.[3] Therefore, the Second Circuit's assessment in *Bradford* must be adopted as an accurate reading of New York law. Since the Second Circuit's view of New York law accords with Illinois law, no conflict exists.

■ Moreover, Illinois conflict of law rules[4] would preclude application of the "employee choice" rule in this case were that rule embodied in current New York law. The Illinois courts have adopted the rules of the *Restatement (Second) of Conflicts* (1971), which dictate that the law of the state with the "most significant relationship to the transaction" be applied. *Florida Risk Planning Consultants v. Transport Life Insurance,* 732 F.2d 593, 595 (7th Cir.1984); *Dr. Perkins School,* 741 F.2d at 1515 n. 19. Both Sarnoff and Fletcher lived and worked in Illinois during their employment by AHP and later when they competed with AHP. Thus, *Roesgen v. American Home Products Corp.,* 719 F.2d 319 (9th Cir.1983) (New York law governed validity of noncompetition clause for former AHP employees who worked in New York, then moved to California for employment with competing companies), cited by AHP, is distinguishable. The reasoning in *Roesgen* actually supports application of Illinois law in this action, since here Sarnoff and Fletcher earned their Plan credits while employed in Illinois. ·

■ *Florida Risk Planning Consultants* further supports the application of Illinois law. There an insurance brokerage firm sought commissions on the sale of insurance contracts. The defendant insurer claimed that since the broker was unlicensed, the contracts were illegal in the states in which they were sold. The Sev-

---

**3.** *Grich v. Wood & Hyde Leather Co., Inc.,* 74 A.D.2d 183, 427 N.Y.S.2d 96 (3rd Dept.1980), comes closest to this position. Citing *Post* for the proposition that ERISA manifests a strong policy against forfeiture, *Grich* remanded for consideration of whether plaintiff had compet-

ed, without addressing the reasonableness of the noncompetition clause.

**4.** This court must apply the conflict of law principles of the forum state, Illinois, in this diversity case. *Dr. Franklin Perkins School v. Freeman,* 741 F.2d 1503, 1515 n. 19 (7th Cir.1984).

enth Circuit applied the law of the states in which the plaintiff rendered performance (sold the insurance contracts) to evaluate the defendant's asserted defense of illegality. Plaintiffs' claim here, that the noncompetition clause violates Illinois' public policy, is closely akin to a defense of illegality. Accordingly, the law of the state where the contract was substantially performed governs.

AHP contends that since Sarnoff and Fletcher have agreed to the application of New York law, this court should honor that choice of law. *See Lloyd v. Loeffler*, 694 F.2d 489, 495 (7th Cir.1982) (*reasonable choice of law by the parties controls*). However, this stipulation cannot be honored for two reasons. First, the plaintiffs argue persuasively that since they received no consideration for their acceptance of New York law, they cannot be bound by that choice. *See United States v. Meadors*, 753 F.2d 590 (7th Cir.1985) (defendants' gratuitous guarantee was without consideration where loan made before guarantee made). Since AHP awarded Sarnoff and Fletcher their shares before requesting that they "agree" to the application of New York law and without conditioning the award upon such an agreement, there is no consideration for that agreement.

■ Moreover, contracting parties cannot avoid the public policies of the state in which the contract is to be performed by simply stipulating to the law of a state which does not embody that policy. *Restatement (Second) of Conflicts*, § 182(2)(b). *See also* § 202 comment (d). Even if AHP had correctly interpreted the law of New York to enforce forfeiture-for-competition clauses, the plaintiffs' agreement to the application of New York law stands on no different footing than would their agreement to a forfeiture with no stipulation of governing law, since the stipulation would not have been "reasonable" if contrary to the law of the state with the most significant contacts with the contract. In other words, to say that plaintiffs stipulated to New York law is to say no more than that they agreed to a forfeiture; it simply begs the question of whether the forfeiture is contrary to the public policy of Illinois.

■ Hence, the Court turns to the question of whether the noncompetition agreement here is valid under Illinois law (and New York law as well) as reasonably necessary to protect AHP's legitimate business interests or to prevent improper and unfair competition. *See Rao v. Rao, supra.* AHP's noncompetition clause operates for the ten year period during which Sarnoff and Fletcher were to receive payouts of their previously earned AHP shares. It is unrestricted geographically and it applies to a wide range of industries (medical instrumentation, paints and coatings, food preparation equipment, drugs and medicines, grocery products, specialty foods and candies, household cleaners, housewares and kitchen products). The breadth of industries to which AHP's restriction applies is its most troubling feature. Former AHP employees are restrained from competing in fields where they could not possibly possess AHP's confidential information. Here, Sarnoff and Fletcher did not compete directly with AHP-EZ-Por. Rather, they forfeited their Plan interests by competing with an AHP division for which they had never worked and with which they presumably had no contact. Consequently, the Plan's forfeiture-for-competition clause is impermissibly overbroad and cannot be enforced. Plaintiffs' motion for summary judgment must be granted and the defendant's cross-motion is denied.

As damages, Sarnoff and Fletcher seek the market value of their AHP shares as of the date they filed their motion for summary judgment, $34,467.08 and $8,579.36 respectively.[5] AHP has requested an oppor-

---

5. In the December 19, 1984 order, the parties were advised that plaintiff Fletcher could be dismissed for failure to allege the minimum

jurisdictional amount in the absence of a federal claim. *See Hixon v. Sherwin Williams Co.*, 671 F.2d 1005, 1007 (7th Cir.1982). In response,

tunity to respond in the event of an adverse ruling on the question of liability. Consequently, the court reserves ruling as to the amount of damages to be awarded.

IT IS THEREFORE ORDERED that:

(1) The claim of plaintiff Fletcher is dismissed for want of jurisdiction.

(2) Plaintiff Sarnoff's motion for summary judgment is granted and the defendant's cross-motion for summary judgment is denied.

(3) A status hearing is set for February 28, 1985 at 9:00 a.m. to address the issue of damages.

(4) The defendant is directed to file by February 22, 1985 any written response to plaintiff Sarnoff's damage calculations.

the parties have stipulated to the exercise of this court's pendent jurisdiction over Fletcher's claim. However, the parties cannot confer subject matter jurisdiction upon the court by stipulation. The exercise of pendent jurisdiction is ordinarily a matter for trial court's discretion. Based on that stipulation, the late stage of the proceedings, the identity of the issues presented (and largely decided), the court would find that judicial economy would be disserved by dismissing Fletcher's claim. Nonetheless, the mandate of *Hixon* clearly deprives this Court of its usual discretion; "a pendent party *must* meet the amount in controversy requirement of the diversity jurisdiction." 671 F.2d at 1009 (emphasis added). Accordingly, Fletcher's claim must be dismissed.