OPINION OF THE COURT
Wachtler, J.
The narrow issue presented by this appeal from a grant of summary judgment for the defendant is the efficacy of a private pension plan provision permitting the employer to forfeit pension benefits earned by an employee who competes with the employer after being involuntarily discharged.
We begin with the premise that "powerful considerations of public policy * * * militate against sanctioning the loss of a man’s livelihood” (Purchasing Assoc. v Weitz, 13 NY2d 267, 272). So potent is this policy that covenants tending to re *87 strain anyone from engaging in any lawful vocation are almost uniformly disfavored and are sustained only to the extent that they are reasonably necessary to protect the legitimate interests of the employer and not unduly harsh or burdensome to the one restrained.* (Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp., 42 NY2d 496, 499; Reed, Roberts Assoc. v Strauman, 40 NY2d 303, 307; see, also, 6A Corbin, Contracts, § 1394, at p 100.)
Merrill Lynch employed Post and Maney as account executives at its Rochester offices beginning April 20, 1959 and May 15, 1961, respectively. Both men elected to be paid a salary and to participate in the firm’s pension and profit-sharing plans rather than take a straight commission, which would have returned approximately twice the amount they earned in salary during the period in question.
The employment of both plaintiffs by Merrill Lynch terminated August 30, 1974. On September 4, 1974 both began working for Bache & Company, admittedly a competitor of Merrill Lynch, in Rochester. Merrill Lynch learned about their new employment in September, 1974.
Fifteen months after their termination, and following repeated inquiries by the plaintiffs into the status of their pensions, the plaintiffs were informed by Merrill Lynch that all of their rights in the company-funded pension plan had been forfeited pursuant to a provision of the plan which permitted forfeiture in the event that an employee directly or indirectly competed with the firm.
Plaintiffs brought this action against Merrill Lynch for conversion and breach of contract, to recover amounts allegedly owed them on account of the pension plan and for punitive damages. They aver that they were discharged by Merrill Lynch without cause. Merrill Lynch does not, for the purpose of this motion, dispute plaintiffs’ version, contending, rather, that for this purpose the reason for termination is irrelevant.
The Appellate Division granted Merrill Lynch’s motion for summary judgment and dismissed the complaint, relying principally on the Appellate Division decision in Kristt v Whelan (4 AD2d 195, 199, affd 5 NY2d 807) to sustain the validity of *88 the forfeiture provision. As the Appellate Division in Kristt held: "It is no unreasonable restriction of the liberty of a man to earn his living if he may be relieved of the restriction by forfeiting a contract right or by adhering to the provisions of his contract [citations omitted]. The provision for forfeiture here involved did not bar plaintiff from other employment. He had the choice of preserving his rights under the trust by refraining from competition with [his former employer] or risking forfeiture of such rights by exercising his right to compete with [him].”
Now, in determining the effect to be accorded a forfeiture-for-competition provision in an employees’ pension, we are for the first time invited to distinguish between voluntary and involuntary termination of employment of the affected employee. Examination of our cases discloses no prior instance in which enforcement of such a forfeiture clause has been sought in circumstances where the employment has been terminated by the employer without cause. Rather, as in Kristt, they have involved claims by an employee who sought pension benefits from his former employer despite having voluntarily left the employer and joined forces with a competitor. In such situations effect has been given to the forfeiture-for-competition provision, and the employee’s claim has been rejected.
Not only do we find no dispositive judicial precedent in our State where the employee has been terminated by the employer without cause. Now we also must take into account the declaration of a strong public policy against forfeiture of employee benefits manifested by the Employee Retirement Income Security Act of 1974 (ERISA) (US Code, tit 29, § 1001 et seq.). Indeed, had the relevant provisions of ERISA been in effect at the time of termination of these appellants’ employment, its mandatory provisions might well have been dispositive in this case and have precluded the forfeiture countenanced by the court below.
Impelled as we are then by that powerfully articulated congressional policy, and confronted with no decisions which command a contrary result, we now conclude that our own policies — those in favor of permitting individuals to work where and for whom they please, and against forfeiture— preclude the enforcement of a forfeiture-for-competition clause where the termination of employment is involuntary and without cause.
In the case at bar we note that the particular provision in *89 the pension plan was not drawn explicitly to cover employees whose employment had been involuntarily terminated; it indiscriminately mandates forfeiture by any "Participant who enters employment or engages directly or indirectly in any business deemed by the Committee to be competitive”. Therefore we need not consider now what would have been our decision had the draftsman of this pension plan manifested an unmistakable intention to impose the heavy penalty of forfeiture for engaging in competition even after discharge of an employee without cause.
Acknowledging the tension between the freedom of individuals to contract, and the reluctance to see one barter away his freedom, the State enforces limited restraints on an employee’s employment mobility where a mutuality of obligation is freely bargained for by the parties. An essential aspect of that relationship, however, is the employer’s continued willingness to employ the party covenanting not to compete. Where the employer terminates the employment relationship without cause, however, his action necessarily destroys the mutuality of obligation on which the covenant rests as well as the employer’s ability to impose a forfeiture. An employer should not be permitted to use offensively an anticompetition clause coupled with a forfeiture provision to economically cripple a former employee and simultaneously deny other potential employers his services.
Under the circumstances of the case at bar it would be unconscionable to tolerate a forfeiture, precipitated as it is by the unwarranted action of the employer. We find, therefore, that in the case of an involuntary discharge, the rule stated in Kristt v Whelan (4 AD2d 195, affd 5 NY2d 807, supra) does not apply. Further, we hold, that where an employee is involuntarily discharged by his employer without cause and thereafter enters into competition with his former employer, and where the employer, based on such competition, would forfeit the pension benefits earned by his former employee, such a forfeiture is unreasonable as a matter of law and cannot stand.
The question to be resolved concerning whether plaintiffs’ termination was voluntary is not appropriate for resolution on a motion for summary judgment. Therefore the order, insofar as appealed from, should be reversed, the motion for summary judgment denied and the complaint reinstated.
*90 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order, insofar as appealed from, reversed, with costs, defendants’ motion for summary judgment denied and the complaint reinstated.

 Several States control covenants not to compete by statute. (See, e.g., Ware v Merrill Lynch, Pierce, Fenner & Smith, 24 Cal App 3d 35, affd 414 US 117; Blake, Employee Agreements Not to Compete, 73 Harv L Rev 625, 648.)