**SIFCO INDUSTRIES, INC., Plaintiff,**

v.

**ADVANCED PLATING TECHNOLO-GIES, INC., et al., Defendants.**

**No. 93–2954 (AGS).**

United States District Court,
S.D. New York.

March 31, 1994.

Roemer & Featherstonhaugh, P.C., New York City, for plaintiff.

Sack, Spector & Barrett, Hartford, CT, for defendants.

*ORDER*

SCHWARTZ, District Judge:

**BACKGROUND**

On June 17, 1992, plaintiff SIFCO Industries, Inc. ("SIFCO") purchased the assets of Selectrons, Inc. ("Selectrons"). On the same day SIFCO closed Selectrons' plant in Waterbury, Connecticut and terminated the employment of the individual defendants, all of whom are Connecticut residents. Plaintiff asserts that the individual defendants, former employees of Selectrons, thereafter breached the non-competition/non-disclosure provision contained in their respective Confidentiality Agreements with Selectrons, agreements which were assigned to SIFCO

upon its purchase of the assets of Selectrons. The individual defendants are alleged to have breached their respective agreements by having formed Advanced Plating Technologies (APT), a company that competes directly with SIFCO in the highly specialized field of selective plating.[1] The provision in question, which appears in each agreement, prohibits defendants from competing in the electroplating business anywhere in North America for a period of two years following termination of employment. Def.Mem., Exhibit 2.

It is undisputed that on June 17, 1992, Marvin Rubinstein, the owner of Selectrons, notified all Selectrons employees by letter that:

> It is with deep regret that I must advise you that I have just sold the major assets of Selectrons Ltd. (U.S.A.) and all of the shares of stock I owned in the overseas Selectrons corporations. The Waterbury plant will be closed as of today.

Def.Mem., Exh. 4, p. 1–3 ("the June 17 letter"). This letter constituted the first notice that the individual defendants received concerning the transaction between Selectrons and SIFCO and, more importantly, of the effect of such transaction on the employees of Selectrons. Def.Mem, Exh. 1–3, Affidavits of Romeo, Debkiewics, and Petrucci, ¶ 4.

With respect to the employment prospects of the Selectrons employees who had worked at the Waterbury plant, the letter went on to state:

> Many of you—particularly those in administrative, sales or skilled technical supervisory positions—will be offered employment with the new owner, Sifco Industries, Inc. Some will be offered full-time positions if you are willing to relocate to the Cleveland area. A very small number may be offered full-time positions in Connecticut. Quite a few of you will be offered a consultation agreement.
>
> I have been asked by the new owner to have you pick up any personal belongings you may have and leave the plant, which no longer belongs to me ... I have tried hard to see to it that the plant was kept

operating here in Waterbury, but was not able to arrange this.

June 17 letter, at 2–3.

Defendants were, respectively, senior administrative, sales or technical employees of Selectrons. Defendant Anthony Romeo was a manager of manufacturing, earning $41,000 per annum after eight years with Selectrons. Romeo Aff. ¶ 2; defendant Mark Petrucci was a senior sales engineer with Selectrons for three years, Petrucci Supp.Aff. ¶ 3, earning a salary of $45,000 per year (including commissions) at the time the assets of Selectrons were sold. Petrucci Aff. ¶ 2; and defendant Michael Debkiewics was a senior electrical engineer at Selectrons, earning $35,000 per year after eight years of employment with Selectrons. Debkiewics Aff. ¶ 2. None of the defendants had ever, in the course of their employment with Selectrons, "been disciplined, warned or given any indication whatsoever that [his] performance had been unsatisfactory." Def.Mem., Exh. 1–3, ¶ 5; see also, June 17 letter, at 3 ("You have all been wonderful, loyal, hardworking employees").

SIFCO, in its complaint in this action, has pleaded that each individual defendant's employment relationship with Selectrons "terminated" as of "on or about the 18th day of June, 1992." Complaint ¶ 18. SIFCO further alleges that:

> On or about June 17, 1992, after SIFCO purchased Selectrons, Selectrons ownership closed the Connecticut Plant at which the defendants were employed. Immediately after the plant closing, SIFCO offered to retain each defendant as a consultant for a two year period. Each defendant refused this offer.

Plaintiff's Mem., pp. 4–5.

The consulting agreements proffered to defendants (1) provided maximum compensation to the individual defendants ranging from $2000–$4000 (depending upon the employee) over the course of two years if SIFCO chose to utilize the employee's services, Def. Reply Mem., Exh. 5–7, ¶ 1, (2) continued

---

1. All of the companies involved in this action engage(d) in, among other things, the manufacture, sale, and distribution of electroplating processes, along with related chemicals, tools, equipment and materials.

the individual defendants' Confidentiality Agreements with Selectrons, including the non-competition provision, *id,* ¶ 6, (3) provided that the applicable law under the Confidentiality Agreement would be changed from New York law to Ohio law, and that Ohio law would govern the Consulting Agreement, *id,* ¶ 9 and (4) set forth that the consultancy would not create an employment relationship between defendants and SIFCO. *Id,* ¶ 5.

According to John Gearity, Vice–President of SIFCO, "SIFCO had conversations with defendants Debkiewicz and Romeo regarding salaried positions with SIFCO. However, the discussions never matured." Gearity Aff., ¶ 5. It is undisputed that no firm offer of employment, verbal or written, was ever made to either Debkiewicz or Romeo. Def. Reply Mem., Exh 9–10, ¶ 4; Plaintiff's Local Rule 3(g) Statement, ¶ 3. SIFCO also does not contest defendants' assertions that preliminary negotiations established that (1) any job SIFCO might have offered Romeo or Debkiewics would have involved relocation to Cleveland, Ohio, Def. Reply Mem. Exh. 9–10, ¶ 4, and (2) SIFCO intended that further employment discussions would be contingent upon Debkiewics' and Romeo's agreement to enter into the consultancy arrangement described above. *Id,* ¶ 3.

 SIFCO's discussions with defendant Petrucci as to potential future employment were more specific than those with his fellow defendants. Gearity Aff., ¶ 7; Def. Reply Mem., Exh. 8, ¶ 3–5. Petrucci, subsequent to his receipt of the June 17 letter, met with SIFCO officers to discuss a position as sales engineer with SIFCO, *id,* at ¶ 3. Petrucci thereafter sent a letter dated June 26, 1992 to SIFCO expressing his interest. Def.

Reply Mem., Exh. 14. Petrucci was informed that such a sales position would involve covering the Northeast area; therefore, he would be able to remain in Connecticut. Def. Reply Mem., Exh. 8, ¶ 3. SIFCO contends that a verbal offer of employment was made to Petrucci, Gearity Aff., ¶ 7. Petrucci asserts that no offer was made, and that he was "specifically told by Mr. Graff among others … that before my application would be considered it was required that I sign the Consulting Agreement." *Id,* ¶ 4. Defendants having moved for summary judgment, the Court is obliged to view the facts in the light most favorable to the non-movant; accordingly, we must accept SIFCO's version of the exchange.[2]

At oral argument, SIFCO did not dispute, however, that the alleged offer to Petrucci was phrased only as "comparable" in terms of salary to his position at Selectrons, and that the offer contained no specifics as to his benefits or duties with his new employer.

In September, 1992, after approximately three months of unemployment, defendants formed defendant APT. *See, e.g.,* Def. Reply Mem., Exh. 8–10, ¶ 5.

As noted *supra* at n. 2, defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(c), or in the alternative, pursuant to Federal Rule of Civil Procedure 56, and we have elected to treat defendants' motion as one for summary judgment. For the reasons set forth below, defendants' motion for summary judgment is granted.

## DISCUSSION

 This action, in which jurisdiction is grounded in diversity, is governed by New

---

2. We note that currently before us is defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(c), or in the alternative, pursuant to Federal Rule of Civil Procedure 56. The parties have submitted affidavits and other evidence to the Court to be considered on the motion to dismiss. Such materials lie outside the four corners of the pleadings; accordingly, we are required either to exclude the additional materials from our consideration and to decide the motion based solely upon the complaint, or to convert the motion to one for summary judgment under Fed.R.Civ.P. 56, *see Fonte v. Board of Managers of Continental*

*Towers Condominium,* 848 F.2d 24, 25 (2d Cir. 1988); *Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1971); *see generally* 5 C. Wright & A. Miller, *Federal Practice and Procedure,* ¶ 1366 (1990 & Supp.1992) (discussing the circumstances in which a court may convert a motion to dismiss into a motion for summary judgment). The parties should not be surprised if the Court considers materials which they themselves have submitted; therefore, we elect to convert this motion to dismiss into a motion for summary judgment, and interpret the expanded record accordingly.

York law.[3] New York courts will not enforce a non-competition provision in an employment agreement where the former employee was involuntarily terminated. The Court of Appeals noted in *Post v. Merrill Lynch,* 48 N.Y.2d 84, 421 N.Y.S.2d 847, 849, 397 N.E.2d 358, 360 (1979) that:

> [w]here the employer terminates the employment relationship without cause, however, his action necessarily destroys the mutuality of obligation on which the covenant rests ...

*See also Weintraub, et al. v. Schwartz,* 131 A.D.2d 663, 516 N.Y.S.2d 946, 948–949 (A.D. 2nd Dep't 1987) ("Assuming plaintiffs have breached their own obligations under the contract, they would be precluded from seeking to enforce against the defendant even the reasonable portion of the restrictive covenant.") (internal citations omitted).

■ Based upon the record before us, we find that defendants were involuntarily terminated from their positions. The June 17 letter, the first notice that defendants received regarding their employment status, stated unequivocally that the Waterbury plant was closed as of that date and emphasized that all jobs associated with that plant had ceased to exist. June 17 letter, pp. 1–3. SIFCO has admitted that defendants' employment with Selectrons was terminated as of that date. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir.1985) ("A party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding"). Specifically, plaintiff alleges that "on or about the 18th day of June, 1992, the employment relationships between the plaintiff's assignor, Selectrons, Ltd. and the defendants ... were terminated." Complaint ¶ 18. Neither in the June 17 letter, nor elsewhere in the record, is there even the most remote suggestion that defendants termination may have been for cause. Indeed, plaintiff nowhere makes such an allegation.

"An essential aspect [of enforceable restraints on employee mobility] is the employer's continued willingness to employ the party covenanting not to compete." *Post, supra* 421 N.Y.S.2d at 849, 397 N.E.2d at 360. SIFCO has simply made no showing that in response to the foregoing termination of defendants without cause or notice, it made a firm offer to each defendant of continued employment in a position comparable in salary, benefits, responsibility, and location to the employee's previous position with Selectrons. Defendants were offered a consultancy arrangement which, by its terms, not only expressly avoided an employment relationship, but also conditioned each employee's agreement upon modification of the terms of the Confidentiality Agreements under which they had been operating with their previous employer. SIFCO also indicated to at least two of the defendants (Romeo and Debkiewics) that further employment discussions were contingent upon defendants' agreement to enter into this consultancy arrangement. If all of this were not enough, neither SIFCO nor Selectrons had, apparently, even met with, or communicated the fact of their proposed transaction or defendants' concomitant termination to, any of the individual defendants. All that defendants were to learn was set forth after the fact, in the June 17 letter. Indeed, SIFCO later made it clear to Romeo and Debkewics that any offer to either of them would be contingent upon their agreement to relocate to Cleveland—a significant alteration of their conditions of employment with Selectrons. Even as to defendant Petrucci, SIFCO's verbal offer of employment omitted reference to Petrucci's potential duties as a SIFCO employee, or to the accompanying benefits, and addressed compensation only in the most general terms. Most importantly, it is undisputed that SIFCO never offered to continue the defendants in their previous, or comparable, positions with comparable salary, employment conditions, and benefits. Preliminary discussions or overtures, especially when combined with the requirement that defendants modify the terms of Confidentiality Agreements with their former employer and/or relocate to a distant place, hardly qualify as "continued willingness to employ." *Id.* Rather, the

---

3. The parties agree that the choice of law provision in the Confidentiality Agreements governs. The Agreements provide that New York law will control "any disputes" arising from the provisions of the contract. *See e.g.,* Def. Mem., Exh. 1–3, ¶ 9.

facts presented to this Court compel the conclusion that defendants were involuntarily terminated by Selectrons on June 17, 1992, and that none of the actions taken by SIFCO subsequent to that date altered the fact of that termination; a termination that SIFCO has admitted in its complaint.

Thus, as a matter of New York law, the Agreements are unenforceable.[4] Accordingly, defendants' motion for summary judgment is granted.

SO ORDERED.

---

**4.** We observe that because we find that the individual defendants were involuntarily terminated, and conclude on that basis that SIFCO cannot as a matter of law enforce the non-competition provision of the Confidentiality Agreements, we need not reach the issue of whether the non-competition provision itself is "reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." *Weintraub, supra,* 516 N.Y.S.2d at 948.