In re UFG INTERNATIONAL, INC., et al., Debtors.

Alan NISSELSON, Trustee of UFG International, Inc., Plaintiff,

v.

DeWITT STERN GROUP, INC., DeWitt Stern Imperatore, Ltd., Paul Olshen and Roger Kluge, Defendants.

No. 97 CIV. 7572 MGC, 97 CIV. 7574 MGC.

United States District Court, S.D. New York.

Sept. 29, 1998.

Wachtel & Masyr, L.L.P. by Michael S. Etkin, Howard I. Elman, Steven J. Cohen, New York City, for Plaintiff.

Pryor, Cashman, Sherman & Flynn by Steven M. Rabinowitz, New York City, for DeWitt Stern Group, Inc. and Roger Kluge.

Todtman, Nachamie, Spizz & Johns, P.C. by Alex Spizz, Richard S. Kanowitz, New York City, for Paul Olshen.

McCarter & English, L.L.P. by William D. Wallach, Joseph Lubertazzi, Newark, NJ, for DeWitt Stern Imperatore, Ltd.

## OPINION

CEDARBAUM, District Judge.

Alan Nisselson, Chapter 11 Trustee of debtor UFG International, Inc. ("UFG"), brought this adversary proceeding against

DeWitt Stern Group, Inc. ("DSG"), DeWitt Stern Imperatore, Ltd. ("DSI"), Paul Olshen and Roger Kluge. The complaint seeks damages and other relief for breach of contract, breach of fiduciary duty, conversion and misappropriation by Olshen and Kluge, unfair competition on the part of all defendants, and unjust enrichment on the part of DSG and DSI. The complaint also seeks turnover and an accounting with respect to DSG and DSI. Defendants moved to withdraw the reference to the bankruptcy court, and for summary judgment on all claims on the grounds that (1) the covenants not to compete entered into by Olshen and Kluge are not enforceable; and (2) the information allegedly misappropriated by Olshen and Kluge was not confidential. At oral argument, I granted defendants' motion to withdraw the reference. For the reasons that follow, defendants' motion for summary judgment also is granted.

## UNDISPUTED FACTS

Prior to filing for bankruptcy on August 22, 1995, UFG was an insurance brokerage firm that placed casualty and property insurance for commercial customers as well as other lines of insurance. From about 1962 to June 23, 1995, Olshen was employed by UFG and its predecessors in generating and writing business for UFG's commercial lines department. From about April 1964 to June 23, 1995, Kluge was employed by UFG and its predecessors as manager of the commercial lines department. In affidavits submitted by Olshen and Kluge, defendants assert that the commercial customers of UFG were readily ascertainable without access to the business files because the customers were engaged in business at advertised locations. Plaintiff has not presented evidence contradicting these sworn statements.

On about October 26, 1987, Olshen entered into a written agreement with BRI Holding Corp., apparently a predecessor or affiliate of UFG (the "Olshen Agreement"), which guaranteed employment to Olshen until December 31, 1989, "and from year to year

thereafter unless terminated within 90 days from the end of the year by either the Employee or the Corporation." [1] The Olshen Agreement granted the employer the right to terminate the agreement "if the Employee commits any material act of malfeasance, disloyalty or breach of trust against the Corporation or ... violates any restrictive covenant set forth herein." Pursuant to the Olshen Agreement, Olshen assigned all his rights in two "books of business" to his employer. These "books of business" were his own book of business, and the "Henry Olshen book of business" that Olshen had acquired from his father. The Olshen Agreement also provided that Olshen would not, during the term of the agreement and for a period of three years thereafter, solicit any customer of his employer to become a customer of any other person or firm for the same or similar products purchased from UFG.

On about July 30, 1990, Kluge entered into a written agreement with BRI Coverage Corporation, also apparently a predecessor or affiliate of UFG (the "Kluge Agreement"), which provided that Kluge would not, during the term of his employment and for a period of two years thereafter, "have any dealings" with any accounts of his employer, including soliciting insurance, offering or furnishing insurance plans or placing insurance.[2]

Both Olshen and Kluge were terminated from their employment with UFG by letters dated June 23, 1995. The letters explained that they were being terminated "due to the financial condition at UFG International, Inc."

In his affidavit, Olshen states that after he was notified of his termination, he was told by UFG's president to seek other employment and to "look for another home for [his] business." Interpreting this statement as a release "from all obligations," Olshen sent a memorandum to UFG's top officers and directors dated June 27, 1995 purporting to confirm this release. Plaintiff has not pre-

---

1. Although neither side explains the relationship of BRI Holding Corp. to UFG, it is assumed for purposes of this motion that UFG succeeded to BRI Holding Corp.'s interest in the Olshen Agreement.

2. Again, it is assumed for purposes of this motion that UFG succeeded to BRI Coverage Corporation's interest in the Kluge Agreement.

**54**

sented evidence contradicting these sworn statements.

Olshen also states that UFG failed to pay him approximately $50,000 in salary and commissions due under the Olshen Agreement, and that UFG never responded to his letter dated August 15, 1995 demanding payment. Plaintiff has not presented evidence contradicting these sworn statements.

In his affidavit, Kluge states that following his discharge, the company failed to pay him for two weeks of salary and for accrued vacation time. Kluge also states that UFG improperly invested his profit-sharing account in UFG stock. According to Kluge, these breaches of UFG's obligations have caused injury to Kluge of over $15,000. Plaintiff has not presented evidence contradicting these sworn statements.

Defendants also affirm that UFG stopped servicing its customers as of July 1995. Plaintiff has not presented evidence contradicting this fact. It is undisputed, however, that plaintiff, as Trustee for UFG, has entered into an asset purchase agreement whereby S & H Insurance Brokerage, Inc. ("S & H") purchased certain assets of UFG, including customer lists, customer accounts and customer records. Under the terms of the asset purchase agreement, the price to be paid by S & H is fifty percent of the gross commissions and service fees that S & H generates from UFG's accounts for each of the first three years after the closing of the asset purchase agreement.

The complaint alleges, and the answers of Olshen and Kluge do not deny, that upon their departures from UFG, Olshen was employed by DSI, an insurance brokerage and consulting firm, and Kluge was employed by DSG, an insurance brokerage firm.

Plaintiff's factual assertions in opposition to the motion for summary judgment are set out in the declaration of Donald R. Rose, Administrative Assistant to the plaintiff (the "Rose Declaration").[3] The Rose Declaration is based on Rose's "review of the Adversary Complaint in this action and UFG's files, and on ... conversations with former UFG officers and employees." Much of the Rose Declaration is submitted not on personal knowledge but on information and belief.

The Rose Declaration states that upon departing from UFG, Olshen physically misappropriated confidential customer lists that contained proprietary confidential information concerning UFG's accounts. It also states that Olshen misappropriated the "books of business" that he had transferred to his employer. Similarly, Rose asserts that Kluge misappropriated certain proprietary and other confidential information regarding the customer accounts of UFG upon his departure. Rose does not specify what information was taken from UFG. According to Rose, UFG's customer files contain information regarding the types of insurance required by the customer, contracts for prior policies setting forth premiums and coverage limits, correspondence with the customer and the insurance companies, the insurance companies that are willing or unwilling to write insurance for the particular risk, the loss experience of the customer, related claims files, and contact information for the employee of the customer responsible for purchasing insurance. Rose asserts that UFG spent a significant amount of time, effort and money in developing this information. Rose further states—upon information and belief—that Olshen and Kluge each solicited customers of UFG at their new places of employment.

Plaintiff alleges that Olshen breached the Olshen Agreement by misappropriating the books of business that he had transferred pursuant to that agreement, misappropriating customer lists and soliciting UFG customers while at DSI. Plaintiff alleges that Kluge breached the Kluge Agreement by misappropriating customer lists and soliciting UFG customers while at DSG. Plaintiff also alleges that Olshen and Kluge breached their fiduciary duties to UFG, and engaged in unfair competition with UFG, by misappropriating and using UFG's confidential

---

**3.** Plaintiff also submitted a document purporting to be a "Counterstatement Pursuant to Local Rule 56.1," but that document sets out no facts. Rather, in conclusory fashion, it either "admits," "denies," or "denies knowledge or information sufficient to form a belief as to" the assertions in the statement of material facts submitted by Kluge and DSG.

customer information. In addition, plaintiff asserts claims for misappropriation and conversion of UFG's confidential customer files. Finally, plaintiff has asserted claims against DSI and DSG, as employers of Olshen and Kluge, respectively, for unfair competition, "constructive trust" (unjust enrichment), turnover and for an accounting.

## DISCUSSION

*Standard for Summary Judgment*

■ A motion for summary judgment shall be granted if the court determines that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is no genuine issue of material fact unless there is sufficient evidence favoring the nonmoving party for the finder of fact to return a verdict for that party, if the nonmoving party is the party with the burden of proof. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether a genuine issue exists, the court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw inferences against the moving party." *In re Chateaugay Corp.,* 10 F.3d 944, 957 (2d Cir.1993). When the nonmoving party bears the burden of proof, Rule 56(e) requires that party to go beyond the pleadings and by affidavits, or by depositions, answers to interrogatories and admissions on file, designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Moreover, Rule 56(e) requires that supporting and opposing affidavits "be made on personal knowledge," that they "set forth such facts as would be admissible in evidence" and that they "show affirmatively that the affiant is competent to testify to the matters stated therein."

*Breaches of Covenants Not to Compete*

■ Under New York law, which the parties agree governs this action, restrictive covenants in employment contracts are enforceable only in certain circumstances. Restrictive covenants such as those contained in the Olshen and Kluge Agreements will be enforced only if reasonably limited in scope and duration, and then only to the extent necessary to protect the employer from unfair competition resulting from the use or disclosure of trade secrets or confidential customer lists, or if the employee's services are unique or extraordinary. In addition, such covenants are enforceable only if they are not harmful to the general public and not unreasonably burdensome to the employee. *American Broadcasting Cos. v. Wolf,* 52 N.Y.2d 394, 403, 438 N.Y.S.2d 482, 486, 420 N.E.2d 363 (1981); *Columbia Ribbon & Carbon Mfg. Co. v. A–1–A Corp.,* 42 N.Y.2d 496, 499, 398 N.Y.S.2d 1004, 1006, 369 N.E.2d 4 (1977); *Reed, Roberts Assocs., Inc. v. Strauman,* 40 N.Y.2d 303, 307, 386 N.Y.S.2d 677, 679, 353 N.E.2d 590 (1976); *Empire Farm Credit ACA v. Bailey,* 239 A.D.2d 855, 856, 657 N.Y.S.2d 211, 212 (3d Dep't 1997); *American Inst. of Chemical Engineers v. Reber–Friel Co.,* 682 F.2d 382, 387 (2d Cir. 1982).

■ Even a reasonably limited covenant not to compete is unenforceable, however, if the employer has breached the employment agreement. *Cornell v. T.V. Dev. Corp.,* 17 N.Y.2d 69, 75, 268 N.Y.S.2d 29, 34, 215 N.E.2d 349 (1966) (otherwise valid covenant against competition is unenforceable "when the party benefited was responsible for the breach of the contract containing the covenant"); *Michael I. Weintraub, M.D., P.C. v. Schwartz,* 131 A.D.2d 663, 665–66, 516 N.Y.S.2d 946, 948–49 (2d Dep't 1987) (even reasonable portion of restrictive covenant unenforceable, because employer breached contract by failing to provide timely written notice of termination). Accordingly, an employee's otherwise enforceable restrictive covenant is unenforceable if the employee has been terminated involuntarily, unless the termination is for cause. "Where the employer terminates the employment relationship without cause, . . . his action necessarily destroys the mutuality of obligation on which the covenant rests as well as the employer's ability to impose a forfeiture." *Post v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 48 N.Y.2d 84, 89, 421 N.Y.S.2d 847, 849, 397

N.E.2d 358 (1979). *See also SIFCO Indus., Inc. v. Advanced Plating Technologies, Inc.,* 867 F.Supp. 155, 158–159 (S.D.N.Y.1994) (covenants not to compete unenforceable when, upon acquiring employer with whom employees had entered into covenants, successor company terminated employees' positions by closing factory at which employees worked).

These cases involved even greater restrictions on employee mobility than do the covenants that the plaintiff seeks to enforce in this case. In each of the foregoing cases, the covenant at issue would have prevented the employee from engaging for a period of time in any work of the type that had been done for the employer, while in this case the covenants merely forbade the solicitation of UFG's customers for a period of time. Nonetheless, the same rule should apply. The cases which hold that a covenant not to compete is unenforceable against an employee who is terminated without cause are premised on the unfairness of permitting an employer who has destroyed the mutuality of obligation on which the covenant rests to benefit from the covenant. *Post,* 48 N.Y.2d at 89, 421 N.Y.S.2d at 849, 397 N.E.2d 358. The same reasoning applies even when the covenant does not entirely restrict the employee's mobility, but restricts him only from dealing with certain customers. Regardless of the scope of the restrictive covenant, an employer cannot hobble his employee by terminating him without cause and then enforcing a restriction that diminishes his ability to find comparable employment.

It is undisputed that Olshen and Kluge entered into written agreements by which each agreed not to solicit the customers of his former employer for two and three years, respectively, after termination of his employment. Plaintiff alleges, and defendants do not dispute, that after termination of their employment with UFG, Olshen and Kluge each solicited customers of UFG in violation of their respective covenants not to compete.

Defendants do not argue that the restrictive covenants are unreasonable in scope or duration. They do contend, however, that the covenants cannot be enforced because UFG terminated Olshen and Kluge without cause. In addition, Olshen contends that his restrictive covenant cannot be enforced because in terminating him, UFG breached the terms of the Olshen Agreement.

■ Plaintiff does not even attempt to argue that UFG complied with the notice of termination provision of the Olshen Agreement, and it is undisputed that, contrary to that provision's requirements, Olshen was not terminated within 90 days of the end of the year. Moreover, it is undisputed that Olshen was terminated because of UFG's financial condition, and not because of any "material act of malfeasance, disloyalty or breach of trust ... or violat[ion of] any restrictive covenant," which the Olshen Agreement provides as grounds for termination by the employer. Under New York law, failure of an employer to comply with the terms of an employment agreement prevents the employer from enforcing a covenant not to compete in the agreement. It is undisputed that UFG did not comply with the terms of the Olshen Agreement, and UFG accordingly is barred from enforcing the restrictive covenant in that agreement.

■ Kluge also was not terminated "for cause," as is required under New York law if an employer desires to enforce a restrictive covenant following involuntary termination of an employee. Kluge, like Olshen, was terminated solely for financial reasons, because UFG was on the verge of bankruptcy.

Plaintiff contends that financial difficulties of the employer constitute "cause" for termination, and therefore the restrictive covenants in this case are enforceable. In support of this argument, plaintiff cites *Anthony F. Wasilkowski, M.D., P.C. v. Amsterdam Memorial Hosp.,* 109 A.D.2d 986, 486 N.Y.S.2d 800 (3d Dep't 1985), in which the plaintiff's employment was terminated because of the poor financial condition of the employer. The court held that the termination was not a breach of the employment contract, which provided that either party could terminate "at any time for reasonable cause, providing that ... the action taken cannot be conceived as arbitrary or capricious in nature." *Id.* at 987, 486 N.Y.S.2d at 802. But in *Wasilkowski,* the employee was

suing the employer for breaching the employment contract by terminating him without cause. The employer was not seeking to enforce a restrictive covenant. The issue was whether the employer was liable for terminating the plaintiff. The question for the court in *Wasilkowski* was whether the termination was "arbitrary or capricious" within the meaning of the contract. An essential element of the enforceability of a restrictive covenant, however, is the employer's continued willingness to provide employment. *See Post,* 48 N.Y.2d at 89, 421 N.Y.S.2d at 849, 397 N.E.2d 358.

Plaintiff also argues that similar restrictive covenants entered into by UFG and former UFG employees were upheld in an unpublished decision after trial in the Bankruptcy Court. *See Nisselson v. Handel,* No. 96–9199A (Bankr.S.D.N.Y. March 26, 1998). *Handel,* however, does not address the New York cases which hold that a restrictive covenant is unenforceable if the employee is terminated without cause. There is no indication that this issue was ever raised in *Handel.*

*Misappropriation of Customer Information*

■ Plaintiff also alleges that Olshen and Kluge misappropriated and used for their own benefit confidential customer information belonging to UFG, and therefore are liable for breach of contract, breach of fiduciary duty, conversion, misappropriation and unfair competition. Plaintiff further alleges that the new employers, DSG and DSI, are liable for unfair competition, unjust enrichment, turnover and accounting as a result of the alleged misappropriation and use by Olshen and Kluge of the confidential customer information.

■ Generally, where customers are readily ascertainable outside the employer's business as prospective users of the employer's services or products, solicitation of the customers by a former employee is not a cognizable wrong. *Leo Silfen, Inc. v. Cream,* 29 N.Y.2d 387, 392, 328 N.Y.S.2d 423, 427, 278 N.E.2d 636 (1972); *Continental Dynamics Corp. v. Kanter,* 64 A.D.2d 975, 975, 408 N.Y.S.2d 801, 802 (2d Dep't 1978). Customer lists ordinarily are not trade secrets or confidential information. *E.g., Brewster–Allen–*

*Wichert, Inc. v. Kiepler,* 131 A.D.2d 620, 620, 516 N.Y.S.2d 949, 950 (2d Dep't 1987); *Reidman Agency, Inc. v. Musnicki,* 79 A.D.2d 1094, 1094, 435 N.Y.S.2d 837, 838 (4th Dep't 1981). A physical taking of customer lists, however, might give rise to a claim for breach of fiduciary duty. *Silfen,* 29 N.Y.2d at 392, 328 N.Y.S.2d at 427, 278 N.E.2d 636 (1972); *Leon M. Reimer & Co. v. Cipolla,* 929 F.Supp. 154, 161 (S.D.N.Y.1996). Moreover, when the customer information is not readily ascertainable and includes information obtained from past dealings, such as insurance coverage amounts and premium amounts, it may constitute confidential information. *John Hancock Mut. Life Ins. Co. v. Austin,* 916 F.Supp. 158, 164–165 (N.D.N.Y. 1996); *see also Allan Dampf, P.C. v. Bloom,* 127 A.D.2d 719, 720, 512 N.Y.S.2d 116, 117 (2d Dep't 1987). An employee who misappropriates such information or uses it for his own benefit may be liable for misappropriation and conversion or unfair competition. *Id.* at 720, 512 N.Y.S.2d at 117 (upholding finding of unfair competition and conversion of trade secrets).

Defendants argue that the claims based on the alleged misappropriation of confidential business information—that is, the claims for breach of fiduciary duty, misappropriation and conversion, unfair competition, unjust enrichment, turnover and accounting—should be dismissed because "customer lists" are not confidential business information under New York law. Plaintiff contends, however, that the cases addressing the confidentiality of customer lists are inapplicable, because the information allegedly misappropriated by Kluge and Olshen consisted of more than names of customers. According to plaintiff, the files at issue included such information as the types of insurance required by the customer, prior insurance and loss history, correspondence with the customer and with insurance companies, the insurance companies which are willing or unwilling to write insurance for the particular risk, related claims files, and contact information. Moreover, as noted above, the physical taking of files—as is alleged with respect to Olshen—may give rise to a claim for breach of fiduciary duty even when the files do not contain trade

secrets or confidential information. If Olshen and Kluge did misappropriate and use such information, defendants may be liable for breach of fiduciary duty, misappropriation and conversion, unfair competition, unjust enrichment, turnover and accounting.

Plaintiff, however, bears the burden of proof that Olshen and Kluge misappropriated confidential information belonging to UFG, and that Olshen physically removed files from UFG's offices. The only evidence proffered by plaintiff is the declaration "on information and belief" of Rose, who never worked for UFG and has no personal knowledge of the conduct of Olshen and Kluge upon their termination or the nature of the information, if any, that Olshen and Kluge took with them upon their departure. Plaintiff has failed to present any admissible evidence supporting its claims of misappropriation and conversion (and, consequently, its claims of unfair competition, unjust enrichment, turnover and accounting). Accordingly, the party with the burden of proof has failed to show that there is a genuine issue of fact for trial, and summary judgment on these claims is appropriate.

■ The complaint also alleges that Olshen, after transferring his interest in two "books of business" to UFG pursuant to the Olshen Agreement, misappropriated these "books of business" and thereby breached that agreement. In addition, the complaint alleges that Olshen and Kluge breached their respective employment agreements by misappropriating customer lists. Again, plaintiff has failed to present admissible evidence in support of these claims. Plaintiff's only proffer on these claims is the Rose Declaration "on information and belief." Rose does not purport to have personal knowledge of the alleged misappropriation of the "books of business" or customer lists. Accordingly, plaintiff fails to raise a genuine issue of disputed fact, and summary judgment also is appropriate with respect to the breach of contract claims against Olshen and Kluge based on misappropriation of customer lists and "books of business."

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.

SO ORDERED.