Edward E. **LUCENTE**, Plaintiff,

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION,** Defendant.

**No. 99 Civ. 3987(CM).**

United States District Court, S.D. New York.

Nov. 2, 1999.

David Quittmeyer, Hand, Arendall, Mobile, AL, Douglas L. McCoy, Hand Arendall, L.L.C., Mobile, AL, for Edward E. Lucente, plaintiff.

Peter T. Barbur, Cravath, Swaine & Moore, New York City, for I.B.M, defendant.

## MEMORANDUM DECISION AND ORDER DENYING IBM'S MOTION FOR JUDGMENT ON THE PLEADINGS EXCEPT AS TO ITS SECOND COUNTERCLAIM

McMAHON, District Judge.

In February 1991, plaintiff Edward Lucente, the President of the Asia Pacific Operation of defendant IBM, "retired" after 30 years employment at IBM. (I place the verb in quotation marks because Mr. Lucente's retirement may have been involuntary and in lieu of his being otherwise terminated.) At the time Mr. Lucente's employment ended, IBM signed a letter agreement in which the corporation agreed to make a rather substantial "special payment" ($675,000) to Mr. Lucente.

From 1981 until his retirement, Mr. Lucente participated in two executive compensation programs—the IBM Variable Compensation Plan and the IBM 1989 Long Term Performance Plan—pursuant to which he was awarded restricted stock and stock options. Both of these plans contained forfeiture for competition claus-

es, which authorized IBM to cancel any unexpired, unpaid or deferred awards if Lucente went to work for any company that IBM deemed to be a competitor. The forfeiture for competition clauses are unrestricted as to time, place and scope; on their face, they appear to bar plan participants from ever accepting any employment with a competing computer company without forfeiting their accrued and vested benefits.

Upon his retirement, Lucente accepted a job at Northern Telecom, a company that one might imagine to be a direct competitor of IBM. Nonetheless, as part of the 1991 letter agreement, IBM deemed Mr. Lucente's employment "not to be competitive or in conflict with the best interests of IBM." The letter agreement specified, however, that Lucente's outstanding stock options and restricted stock remained subject to the forfeiture for competition provisions of the relevant IBM incentive compensation plans, and Lucente agreed that, following his retirement, he would "not engage in any activity as an employee, consultant, or director, personally or with any firm or organization, that is or becomes, in IBM's sole opinion, a competitor of IBM or its subsidiaries, or is otherwise prejudicial to or conflicts with the interests of IBM."

In April 1993, Lucente left Northern Telecom and went to work for Digital Equipment Corporation ("Digital") as Vice President of Worldwide Sales and Marketing. IBM, taking the position that this employment was competitive, canceled Lucente's outstanding restricted stock and stock options.

Six years later, Lucente has sued IBM, contending that IBM's actions constitute a breach of its obligations under the two plan documents. Alternatively, Lucente argues that the Variable Compensation Plan is unenforceable and/or void or voidable. IBM has counterclaimed for return of its substantial severance payment to Lucente, on the ground that Lucente's acceptance of employment with Digital violated the terms of his separation letter, as well

as for payment of $40,790.14 owed by Lucente to IBM pursuant to a tax reconciliation account. IBM has moved for judgment on the pleadings as to both Lucente's claims and its counterclaims.

Except for IBM's counterclaim relating to the tax reconciliation account, as to which Lucente admits liability, IBM's motion is denied.

### 1. Choice of Law: New York or Alabama?

█ The first issue to be decided is whether New York or Alabama law applies. Lucente's employment had no contact whatever with Alabama, where he now lives and where he originally filed this action—a fact recognized by the Alabama judge, who transferred the matter to this Court on IBM's motion. Moreover, the Plans are both governed by New York law. Nonetheless, Lucente argues that the law of Alabama should apply in determining the enforceability of the forfeiture-for-competition plans.

█ Because the case was originally brought in the State court in Alabama, Alabama choice of law principles apply in this, the transferee forum. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Lucente argues that Alabama public policy against forfeiture for competition clauses is so strong as to override the contract's choice of governing law. IBM disputes Lucente's reading of Alabama law, but also argues that Alabama's lack of a materially greater interest in this dispute, coupled with New York's significant relationship to the dispute mandates the application of New York law under Alabama's choice of law rules—even if the forfeiture for competition clauses offend Alabama public policy.

IBM is correct. Alabama subscribes to Restatement (Second) of Conflict of Laws. *See Hughes Associates, Inc. v. Printed Circuit Corp.,* 631 F.Supp. 851, 853–55 (N.D.Ala.1986). Sections 187–88 of the Restatement provides that, before a state

court may disregard a contractual choice of law provision, it must find three things: (1) that a contractual provision is at odds with a fundamental policy of the forum state; (2) that but for the choice of law provision the law of the forum state would apply; and (3) that the forum state has a "materially greater interest" than the chosen state and the "most significant relationship" to the dispute.

There is no need for this Court to resolve the parties' dispute over the extent to which Alabama does or does not recognize forfeiture for competition provisions, because it is quite clear that Alabama does not have a materially greater interest in this dispute than does New York, nor does it have the most significant relationship to the dispute. IBM, which is headquartered in New York, employs executives who participate in its compensation plans throughout the world. Both IBM and the State of New York have a strong interest in having the provisions of these world-wide compensation plans interpreted in an uniform manner. Executive compensation plans would be essentially worthless if their terms meant different things to different participants based on a participant's residence. This is even more true when the participant moved to his non-New York place of residence after retirement, so that the residence bore no relationship whatever to the IBM/employee working relationship, as is the case here.[1]

Because plaintiff has not established all three conditions necessary for the application of Alabama law to this dispute, the law of the contract—New York law—applies.

## 2. The Enforceability of the Forfeiture for Competition Doctrine

■■■ IBM argues, correctly, that New York recognizes, and in some circumstances enforces, forfeiture for competition clauses. In particular, New York has long recognized what has become known as the "employee choice doctrine," which provides

that "an employee who receives benefits conditioned on not competing with the conferring employer has the choice of preserving his benefits by refraining from competition or risking forfeiture of such benefits by exercising his right to compete." *Kristt v. Whelan*, 4 A.D.2d 195, 199, 164 N.Y.S.2d 239 (1st Dept.1957), *aff'd without opinion*, 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E.2d 116 (1958). As IBM notes, this very Court enforced the employee choice doctrine in the context of forfeiture of vested rights under another of IBM's many executive compensation plans. *IBM v. Martson*, 37 F.Supp.2d 613 (S.D.N.Y. 1999). And when the employee choice doctrine is implicated, a New York court will enforce it without regard to the reasonableness of the forfeiture. *Kristt v. Whelan*, 4 A.D.2d 195, 199, 164 N.Y.S.2d 239.

■■■ However, not every forfeiture for competition clause implicates the employee choice doctrine. Because the employee choice doctrine departs from the usual New York rule that covenants not to compete will be enforced only when they are reasonable in time, place and scope, *Purchasing Associates, Inc. v. Weitz*, 13 N.Y.2d 267, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963), the New York Court of Appeals has placed a significant limitation on that doctrine. In *Post v. Merrill, Lynch, Pierce, Fenner & Smith*, 48 N.Y.2d 84, 421 N.Y.S.2d 847, 397 N.E.2d 358 (1979), that Court stated that an essential aspect of the doctrine "is the employer's continued willingness to employ the party covenanting not to compete." *Post*, 48 N.Y.2d at 89, 421 N.Y.S.2d 847, 397 N.E.2d 358. The only reason for recognizing an exception to New York's otherwise strong public policy against restricting employment—a public policy at least as strong as Alabama's—is that the affected employee has the option to remain with the employer who has imposed the forfeiture for competition provision. In other words, the employee choice doctrine applies to one and only one factu-

---

1. According to the information made available to the Court, plaintiff worked exclusively in New York or Japan during his years of employment with IBM.

al situation—where the employer is willing to keep the employee who is entitled to certain benefits by virtue of his employment, but the employee, by his or her own choice, elects to change employers and thereby to forfeit entitlement to those benefits.

The few reported cases where the doctrine has been applied demonstrate its limited scope. For example, in *Kristt*—the case in which the doctrine was announced—a former employee of defendant Haire Publishing Company who voluntarily sought employment with a competitor corporation was found to have forfeited his right to income from a corporate trust that was explicitly conditioned on non-competition. *Kristt*, 4 A.D.2d 195, 198, 164 N.Y.S.2d 239. And in the aforementioned *Martson* case, the plaintiff-employee forfeited the proceeds from the sale of his stock awarded to him under the Plan by quitting his job at IBM and immediately going to work for a direct competitor.[2] Neither of these employees was fired by the employer imposing the restrictions; both would have been welcome to remain in their jobs.

By contrast, when an employer has not been willing to retain an employee, it has been held that the employer cannot force a forfeiture of benefits when it would be unreasonable to enforce a covenant not to compete. In *Post* itself, the court held that Merrill Lynch could not invoke a forfeiture-for-competition provision in its pension plan where the plaintiffs—two former brokers who had been fired—went to work for Bache Securities, a direct competitor. *Post*, 48 N.Y.2d 84, 89, 421 N.Y.S.2d 847, 397 N.E.2d 358. And in *Murphy v. Gutfreund*, 583 F.Supp. 957 (S.D.N.Y.1984)—

which arose in the somewhat different setting of a partnership rather than an employment relationship—a former managing partner of Salomon Brothers raised a triable issue as to the reasonableness of a non-competition clause precisely because he had been "encouraged" by his partners to relocate to Merrill Lynch (a Salomon competitor)—i.e., he had, in effect, been involuntarily terminated. *Murphy*, 583 F.Supp. at 965, *dismissed on other grounds*, 624 F.Supp. 44 (S.D.N.Y.1985).

Here it would be inappropriate to award IBM judgment on the pleadings dismissing Lucente's claims. I must, of course, construe the pleadings most favorably to Lucente, and may not dismiss unless it is clear that he could not recover on any view of the facts. *F.R.C.P. 12(c). See* 5A Charles A. Wright & Arthur R. Miller, *Fed. Practice and Proc.* § 1367. There is nothing in the pleadings to suggest that IBM would have reemployed Lucente in 1993, when he had the opportunity to leave Northern Telecom and move to Digital. Moreover, one could fairly infer from some of the information contained in the pleadings—the extremely generous payment made to Lucente at the time of his separation, for example, and fact that he was granted permission for him to work with an IBM competitor despite the company's strong "golden handcuffs" arrangements—that Lucente's "retirement," like plaintiff's in *Murphy*, was a polite word for his "termination." Material outside the pleadings offered by Lucente—which I am not inclined to ignore, although I do not need to consider it in order to deny IBM's motion[3] —confirms this inference, and suggests even more directly that IBM did in fact

---

2. IBM refers to the Long Term Incentive Compensation Plan in Martson as "virtually identical" to the plans in which Lucente was a participant. IBM Reply Mem. At 7. However, there is a critical distinction between the two plans: the forfeiture for competition clause in Martson's plan only restricted Martson from going to work for a competitor for six months, whereas the restriction in the two plans now before the Court would appear to

be perpetual. *See Martson*, 37 F.Supp.2d at 615.

3. Ordinarily, the court decides on its own motion to treat defendant's motion to dismiss on the pleadings as a motion for summary judgment under Rule 56 by looking at extra pleading. There is no need for me to convert this motion, but if I did, it is abundantly clear that material issues of fact exist and that dismissal at this stage would be premature.

fire plaintiff in 1991. Involuntary "retirement" would of course preclude the application of the employee choice doctrine and trigger all of the customary requirements that the two forfeiture for competition clauses be reasonable in time, place and scope.[4]

Thus, on this record, the applicability of the employee choice doctrine—and with it IBM's ability to avoid examination of the reasonableness of its perpetual forfeiture for competition clauses—is very much up in the air. IBM's motion for judgment on the pleadings dismissing Lucente's claims is denied.

### 3. Forfeiture of the Severance Payment

■ IBM's motion for judgment on the pleadings awarding it judgment on its counterclaim for return of the $675,000 payment is denied for a very simple reason: nowhere in the 1991 separation letter agreement is that payment explicitly conditioned on Lucente's perpetual forbearance not to compete (except as an employee of Northern Telecom). The letter does quite clearly state, however, that the stock options and restricted stock payable to him under the two executive compensation plans continue to be subject to the forfeiture for competition provisions of those plans. Thus, the lack of any language conditioning receipt and retention of the severance payment on Lucente's forbearance from competition is all the more striking. It is far from apparent to this Court that Lucente received the $675,000 as consideration for a perpetual covenant not to compete. Indeed, the two provisions (payment of the $675,000 and covenant not to compete) appear in different paragraphs of the 1991 letter agreement. The document's silence on this critical point bars entry of judgment in IBM's favor at this point.

### 4. Money Due From Lucente Under the Tax Reconciliation Plan

At oral argument, Lucente's counsel conceded that his client owed IBM slightly in excess of $40,000 under the tax reconciliation accounting system applicable to employees stationed overseas. IBM shall have judgment on its counterclaim in the amount of $40,790.14, plus interest from the date the amount should have been paid (which date is not apparent from the record).

### 5. Scheduling Order

The parties are directed to proceed with discovery in accordance with the attached civil case management order.

This constitutes the decision and order of the Court.

---

4. In this regard, I note that another judge of this Court decided just last week that a relatively brief one-year covenant not to compete was unreasonably long in the fast-moving world of the computer/internet business. *See EarthWeb, Inc. v. Schlack,* 71 F.Supp.2d at 302–03, 313–14 (S.D.N.Y.)