*891 OPINION OF THE COURT
Kenneth R. Fisher, J.
Lenel Systems International, Inc. filed this action against its former employee, Richard Todd Smith, alleging two causes of action seeking a declaration that defendant is in breach of a restrictive covenant and that plaintiff is entitled to rescission of stock option agreements under the employee choice doctrine. Lenel Systems now moves for summary judgment declaring that Smith is in violation of paragraph 13 of the stock option agreements, that the violation is a material breach of the agreements, and that Lenel is entitled to rescission thereof. Smith cross-moves for summary judgment dismissing the complaint, and for judgment on his counterclaim for payment of stock dividends. The cross motion was heard by the court many weeks after plaintiffs motion was argued, at the request of plaintiff.
Lenel Systems develops, manufactures, markets, and sells integrated physical security systems. Smith was employed by the plaintiff from July 1, 1999, through August 4, 2004, when he resigned. Smith was in charge of international sales and marketing at the time of his resignation, and held the title of director. When Smith was recruited by Lenel Systems, he was, in June 1999, offered the position of director of international sales and marketing. Later, he was promoted to vice-president of that unit of Lenel. Smith alleges without contradiction that the compensation package offered by Lenel included salary, participation in a bonus plan, 15,000 stock options, and reimbursement of moving expenses from Boston to Rochester not to exceed $10,000. According to Smith, additional stock options were promised each year as part of a compensation plan in lieu of higher salary. Smith was told he would have to sign a confidentiality agreement but that a restrictive covenant restricting competition would not be required. Smith asked to see the options paperwork, but was told that the board of directors had not yet finished drafting the agreements. Smith decided to accept the offer. In October 1999, he was presented with the stock option agreements and plan for the first time.
The agreements contained a restrictive covenant which reads as follows:
“In consideration of the grant of this option, the Optionee [Smith] agrees that while employed by the Company [Lenel Systems], and for a period of two years after termination of employment for any reason or departure from the board of directors for any *892 reason, the Optionee shall not directly or indirectly, as an owner, director, officer, employee, partner, coventurer, agent, advisor, otherwise, conduct business in competition in any way with the Company or its products in the market for security systems and security systems hardware and software components including without limitation access control, badging, identification, or other security systems functional modules, software or equipment in the market; provided, however, that this provision will not preclude the Optionee from owning shares in any publicly-held corporation in amounts less than 55% of the issued and outstanding voting stock of any such corporation.
“In the event the Optionee becomes subject to the restriction herein, the Company shall have the right to extend the period of the restriction from two to three years by giving the Optionee notice, not less than 60 days prior to the expiration of the restriction, that the Company elects to engage the Optionee as a consultant during the additional year and pays the Optionee $1,000 per month for such consulting availability.” (Incentive stock option agreement 1113.)
Smith signed the first such agreement on October 11, 1999. Although Smith’s options vested over time between 1999 and 2004, he did not exercise them upon vesting.
Less than three weeks before his resignation, however, i.e., on July 15, 2004, Smith gave Lenel Systems $109,200 to exercise options vested in 1999, and $21,800 to exercise options vested in 2000, for a total of $131,000. Lenel Systems, evidently recognizing Smith’s vesting rights, issued Smith a dividend check in the amount of $20,625 on July 30, 2004. Shortly thereafter, on August 4, 2004, Smith resigned. He began to work for S2 Security Corporation immediately thereafter. Lenel Systems commenced this action seeking an order declaring, inter alia, that Smith is in violation of the restrictive covenant, that all option agreements are null and void, and directing that both parties be placed back in the same position they were in prior to the execution of the option agreements. Lenel Systems, prior to suit, tendered the $131,000 check to Smith, minus the stock dividend payment it made, and has refused to issue the stock certificates.
Lenel Systems contends that it is entitled to summary judgment because Smith violated the restrictive covenant by going *893 to work for S2 Security, an alleged competitor. Whether S2 is indeed a competitor of plaintiff is sharply disputed on this record. Lenel Systems contends that S2 and it manufacture virtually the same products. Lenel Systems maintains that, notwithstanding the lack of a forfeiture for competition clause, the restrictive covenant was triggered, thereby entitling Lenel Systems to rescind the stock option agreement under the employee choice doctrine. According to Lenel, Smith entered into the stock option agreement with an understanding that he was awarded stock options as part of his overall compensation package at the price of employment mobility. Further, according to Lenel Systems, rescission is an appropriate remedy because the restrictive covenant goes to the very heart of the agreement between the parties, so the breach is material in nature.
Smith contends that the stock option agreement was part of an employment package which was used to induce him to move to the area to take the position with Lenel Systems. He maintains that he did not violate the restrictive covenant because Lenel Systems and S2 are not competitors. Smith submits that Lenel makes security systems which can be placed with Microsoft Windows servers, and that S2 only makes security products which can be used by different servers such as Apple, Linux and Sun Microsystems. Smith said that each company has an essentially separate customer base. Therefore, in Smith’s view, none of their potential customers are the same and, logically, they are not in competition with each other. Accordingly, Smith concludes that he did not violate the restrictive covenant and he is entitled to the stock options which he has already exercised.
Smith contends further that regardless of whether he violated the restrictive covenant, rescission is not an available remedy in this case, because there is no forfeiture clause in the agreements. In other words, he contends that the employee choice doctrine does not apply because the stock option agreement does not contain a forfeiture for competition clause. If Lenel Systems wanted such a remedy, it should have included such a clause in the stock option agreement it proposed for Smith to sign. Instead, the only remedy provided to Lenel Systems in paragraph 13, should Smith compete within two years of departure, was an option on notice to extend the life of the covenant for an additional year and retain Smith as a consultant to Lenel for the small sum of $1,000 per month. Accordingly, under Smith’s view, the options were earned several years prior to his *894 departure when he had a right to (but did not) exercise them. To make him give them back -by court order would, under Smith’s argument, violate a long held public policy that employees should not be required to forfeit that which they have earned prior to resignation. (De Marie & Schoenborn v Loncar, 309 AD2d 1163 [4th Dept 2003]; Weiner v Diebold Group, 173 AD2d 166 [1st Dept 1991].)
If Lenel Systems is awarded summary judgment, this would be the first case in this state applying the employee choice doctrine to a noncompetition provision which lacked a forfeiture clause. The employee choice doctrine upheld in Kristt v Whelan (4 AD2d 195, 199 [1st Dept 1957], affd without op 5 NY2d 807 [1958]) and in Post v Merrill Lynch, Pierce, Fenner & Smith (48 NY2d 84 [1979]) presupposes a forfeiture clause of the kind these agreements between Lenel Systems and Smith lack. Thus, in Kristt, it was held: “It is no unreasonable restriction of the liberty of a man to earn his living if he may be relieved of the restriction by forfeiting a contract right or by adhering to the provisions of his contract.” (Kristt, 4 AD2d at 199.) As aptly put in Sarnoff v American Home Prods. Corp. (798 F2d 1075, 1083 [7th Cir 1986, Posner, J.] [applying New York law]), “the whole point of Kristt was to distinguish between a covenant not to compete, whereby a former employee could be enjoined from competing with his former employer, and a condition whereby the former employee would merely forfeit a monetary benefit if he went into competition with his former employer.” Here, no provision of the agreements directed a forfeiture if Smith took up employment in competition with Lenel. In the words of Kristt (at 199), the agreement did not in so many words “relieve” Smith “of the restrictions,” either by forfeiture or otherwise. Instead, the provision in question is an unqualified restrictive covenant (except as to time) barring Smith from other employment in competition with Lenel. (Contrast Kristt, 4 AD2d at 199 [forfeiture for competition clause “did not bar plaintiff from other employment'’'[1] because he “had the choice of preserving his rights under the trust by refraining from competition with (his former employer) or risking forfeiture of such rights by exercising his right to compete with (him)”] [emphasis supplied], quoted in Post, 48 NY2d at 88.) Similarly, in Computer Task Group v Ehlke (286 AD2d 973 [4th Dept 2001]), the noncompete provision contained a forfeiture clause but no bar to future employment, thereby giving the former employee the informed choice contemplated by the employee choice doctrine. Here, paragraph 13 barred future employment only.
*895 The court has found only one case in which the employee choice doctrine was held to apply to a noncompete provision lacking a forfeiture for competition clause. (York v Actmedia Inc., 1990 WL 41760, 1990 US Dist LEXIS 3483 [SD NY, Mar. 30, 1990].) But in that case, the parties “assumed throughout th[e] case, and no party has argued otherwise, that a breach of paragraph 11 [the noncompete provision] would relieve defendant of its obligations under the stock option agreement and prevent plaintiff from enforcing that agreement.” (1990 WL 41760, *1, 1990 US Dist LEXIS 3483, *2.) In this case, however, Smith sharply disputes this point.
In addition to the New York cases cited above, cases from other jurisdictions emphasize the “distinction between provisions that prevent an employee from working for a competitor and those that call for a forfeiture of certain benefits should he do so.” (Tatom v Ameritech Corp., 305 F3d 737, 744 [7th Cir 2002] [collecting cases].) The point is profitably explored in Schlumberger Tech. Corp. v Blaker (859 F2d 512, 515-517 [7th Cir 1988]), and the decision to apply the employee choice doctrine (id. at 517) depended upon the presence of a forfeiture for competition clause which did not otherwise restrict employment mobility. (See Annotation, Validity, Construction, and Effect of Provision Forfeiting or Suspending Benefits in Event of Competitive Employment as Part of Retirement or Pension Plan, 18 ALR3d 1246.) Accordingly, the employee choice doctrine is not, strictly speaking, applicable here, and the question remains whether, as Smith contends, the reasonableness scrutiny of BDO Seidman must be undertaken. (BDO Seidman v Hirshberg, 93 NY2d 382, 388 [“the agreement, in its purpose and effect, is a form of ancillary employee anticompetitive agreement that will be carefully scrutinized by the courts”].)
Lenel Systems attempts to avoid the reasonableness inquiry by reading into the stock option agreements the remedy of rescission for a material breach, applicable to all contracts, having particular reference to paragraph 13 of the stock option agreement which recites that the consideration for the incentive stock options is the agreement not to compete. In other words, Lenel seeks to draw from the remedy of rescission the very forfeiture provision that is lacking in paragraph 13. Under Lenel’s theory, rescission of the option agreements leaves Smith free to compete but without the benefit of the stock options. In other words, Lenel asks why, if all they want is the stock back and not an injunction that interferes with Smith’s current employment, there is *896 any need to look at reasonableness. The need for reasonableness scrutiny under this view is only invoked when employment rights are sought to be compromised. Here Lenel’s narrow request for relief avoids that possibility.
Whatever the merit of this view, the court still cannot make a determination whether a material breach occurred supporting rescission because Smith has raised an issue of fact concerning what the full consideration was for issuance of the stock options. If, as Lenel contends, Smith was not offered the 15,000 stock options back in June 1999, and nevertheless accepted Lenel’s offer of salary, bonus, and moving expenses, then the situation might be different. A postemployment offer of stock options in exchange for an agreement not to compete for two years, as a stand-alone transaction during the course of an employment already commenced on the other terms, might well lend itself to the rescission analysis urged on the court by Lenel, notwithstanding the lack of an explicit forfeiture for competition clause. As stated above, the narrow request for rescission, which would leave Smith’s employment rights fully intact, logically takes the case out of the reasonableness scrutiny BDO Seidman would otherwise require if Smith’s employment rights were sought to be curtailed. The only question under Lenel’s factual scenario concerns whether Smith’s contention that his earnings cannot be disgorged by the court has any merit. But there is extensive case law to the effect that incentive stock options are not in the nature of salary or earned income. (See International Bus. Machs. Corp. v Martson, 37 F Supp 2d 613, 615, 618 [SD NY 1999].) Like Weiner v Diebold Group (173 AD2d 166 [1st Dept 1991]), however, the question cannot on this record be determined summarily.
But if Smith is right on the consideration question, Lenel only considers one side of the rescission equation without considering what must be done to restore the parties to the status quo ante. In actions at law for rescission, the plaintiff must “mak[e] allowance for benefits received.” (Schank v Schuchman, 212 NY 352, 359 [1914].) If the option agreements were just part of a much larger employment package memorialized in multiple agreements, part of the consideration for their issuance was, unquestionably, Smith’s multi-year service to Lenel which has already been performed. The question of rescission under Smith’s scenario, therefore, is not as simple as suggested by Lenel, which would have the court consider the option agreements in a vacuum. If indeed paragraph 13 is read in the *897 broader context of the complete employment package offered to and enjoyed by Smith, rescission is now impossible because of Smith’s long service record with Lenel. (Rudman v Cowles Communications, 30 NY2d 1, 13 [1972] [rescission “is to be invoked only when there is lacking complete and adequate remedy at law and where the status quo may be substantially restored”]; Singh v Carrington, 18 AD3d 855 [2d Dept 2005] [same]; Sokolow, Dunaud, Mercadier & Carreras v Lacher, 299 AD2d 64, 71 [1st Dept 2002] [“a party cannot rescind a contract if that would injure the party against whom rescission is sought because, under the contract, that party has changed his position and cannot be returned to the status quo ante”].) That leaves for consideration Smith’s cross motion for summary judgment.
Defendant cross-moves for summary judgment dismissing the complaint and awarding judgment on his counterclaim for payment of dividends declared on October 11, 2004, in the amount of $20,625. Smith’s motion is largely devoted to his contention that Lenel Systems and S2 Security are not competitors and enjoy wholly different market segments, but he also contends that the stock option agreements do not authorize forfeiture of the vested options he exercised in July 2004, and that there was no consideration for his agreement not to compete because the 15,000 stock options were included in the initial compensation package Smith accepted before coming to Rochester; no mention was made of a restrictive covenant not to compete until he was presented with the option agreements well after beginning employment with Lenel.
Smith met his initial burden to show that Lenel Systems and S2 Security were not competitors by his affidavit which details the nature of each company’s business, each company’s product line, each company’s market, and by his claim that there was not “one [instance] in which a customer from whom business was solicited [from Lenel Systems] instead purchased a product from S2.” Excerpts from each company’s Web site also were included. In response, however, Lenel Systems provided affidavits which raise an issue of fact on the competition issue. Lenel relies in large measure on the language of paragraph 13, which provides that the noncompete clause is violated if the new employer’s products compete “in any way” with Lenel Systems “in the market for security systems, etc.” (Reply affidavit of Alexander Zapesochary, sworn to Apr. 12, 2005.) But Lenel also alleges in response, through the affidavit of Michael Regelski, vice-president for software development, that one of *898 Lenel’s long-time customers, Cisco Systems, Inc., was approached by S2 Security just after Smith began work at S2, and that although Cisco tentatively purchased a S2 system shortly thereafter, Lenel Systems ultimately won the customer back. Lenel concludes that the episode “confirms the obvious: S2 and Lenel were, and are, competitors.” Accordingly, even if Smith satisfied his initial burden on the cross motion in connection with the competition issue, Lenel Systems has raised an issue of fact.[1]
Smith also seeks summary judgment on the issue whether his agreement not to compete is supported by consideration. He asserts without contradiction that Lenel offered him a compensation package that included the 15,000 stock options well before he moved his family to Rochester. Smith maintains that he accepted the offer with the understanding that there would be a confidentiality agreement, but no requirement of a noncompete, and that the first time he learned of Lenel’s desire to have him sign a noncompete was when he was presented with the stock option agreements in the fall of 1999, well after commencing employment with Lenel. From this sequence of events, which has gone unchallenged in any of Lenel’s affidavits,[2] Smith draws two conclusions: first, that there was adequate consideration for the issuance of the stock options in his agreement to work for Lenel quite without regard to the recital in paragraph 13 concerning the noncompete clause, and second, that there was no consideration (not already given before he came to Rochester) for the noncompete clause.
Even if these conclusions are established as a matter of law under Smith’s version of the facts, Smith cannot prevail in his initial burden to show entitlement to judgment as a matter of law awarding him the stock and dividends because he fails to establish as a matter of law the facts supporting his theory of consideration. As set forth above,
“[wjhether the parties intended to treat both agree *899 ments [i.e., the unwritten employment agreement of June 1999 and the stock option agreements beginning in October 1999] as mutually dependant contracts, the breach of one undoing the obligations under the other, is a question of fact . . . [depending in ‘primary’ measure on] the intent manifested, viewed in the surrounding circumstances.” (Rudman v Cowles Communications, 30 NY2d at 13.)
As such, summaiy disposition of the issue is inappropriate.
The motion and cross motion are each denied.

. Smith provides a surreply affidavit of S2 Security’s chief executive officer, John L. Moss, which disputed Lenel’s characterization of the Cisco transaction. Moss maintained that S2 was not attempting to sell Cisco any system for Cisco’s own use, but instead was seeking to market one of its products using Cisco as a distributor through an original equipment manufacturer agreement. Resolution of the issue cannot be made on prediscovery summary judgment and will have to await discovery development for a trial.

. Indeed, in Lenel’s reply memorandum (at 8), Lenel agreed that “Smith was never obligated to execute a noncompetition agreement at the time he was hired (or as a condition of continuing employment).”